[No. 10,451.—Department No. 2.]

## THE PEOPLE v. SMALLMAN ET AL.

LARCENY — DEFINITION—CRIMINAL LAW. — Upon an indictment against S. and his wife for larceny of money, the evidence for the prosecution showed that the prosecuting witnesses delivered money to S. for Mrs. S., according to a previous understanding with the latter that she should invest the money in stocks for the use of the prosecuting witnesses, and tended to show that the defendants obtained the money without any intention of investing it as agreed, and with the fraudulent intent of converting it to their own use. The Court below refused to advise the jury to acquit on the close of the testimony for the prosecution; and, upon the close of the trial, in effect, charged the jury to find the defendants guilty, if they found that they obtained the money in the manner and with the intent above stated, and, afterwards refused a motion for a new trial based on the ground that the verdict was contrary to the evidence; thus, in effect, deciding that the facts stated constituted larceny. *Held*, not to be error.

ID.—ID.—ID.— SUPREME COURT—JURISDICTION— QUESTION OF LAW —DEFINITION—CONFLICT OF EVIDENCE—CONSTITUTIONAL LAW.—Under the late Constitution, the Supreme Court had appellate jurisdiction in criminal cases, on questions of law alone; and such a question is presented—where the verdict is complained of as being contrary to the evidence—only where there is no evidence to establish the charge; and not where there is evidence tending to prove it.

ID. — EVIDENCE — CRIMINAL LAW — RES GESTÆ.— Upon the cross-examination of a witness for the prosecution, an affidavit made by the witness was offered by the defendant, for the purpose of impeaching her testimony. *Held*, that the circumstances under which the affidavit was made, and the conversation had by the witness with the person at whose instance it was made, were admissible as parts of the transaction.

ID.—ID. — ID. —ID.— DECLARATIONS. — Upon the cross-examination of the prosecuting witness, the defendants drew out that the witness had consulted one S. in relation to the transaction out of which the indictment grew, and in part developed what had occurred between them. *Held*, that the plaintiff was entitled to call out all that took place between the witness and S., in the consultation referred to.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Municipal Criminal Court of the City and County of San Francisco. BLAKE, J.

The material parts of the charge of the Court below (referred to in the opinion) were as follows: As a general rule, where there is consent there is no larceny, but to this rule there are exceptions. If a person obtains money from the owner by fraud, by undertaking and promising to do with it what he does not intend to do with it, and what he does not in fact do with it, after he has got it into his possession ; and if, at the time he is endeavoring to get possession of it, and at the time he

gets possession of it, he intends to appropriate it to his own use; and if, after he gets possession of it, he does appropriate it to his own use, as he intended to do when he obtained the possession; and, if the owner, at the time he parted with the money, did not intend to part with the property in it, but only with the possession of it; and if, in accordance with the arrangement under which the money was parted with by the owner, the money still remained the property of the person from whom it was obtained, and was the property of the person from whom it was obtained at the time it was so converted—the person so obtaining and converting the money is guilty of larceny, and of grand larceny if the money exceeds in value fifty dollars in gold coin of the United States.

If the owner of money delivers it to another person, upon the understanding and agreement between them, that the person to whom the money was delivered, will with it, and for and on behalf of the person from whom it is received, purchase stock or other property for the person from whom the money is received, the money, after the possession of it is parted with, remains the property of the person from whom it was received, till it is invested in accordance with the understanding and agreement before spoken of.

Up to the time of such investment, the person from whom it was received may reclaim it. If the defendants obtained from the Coopers named in the indictment, the money described in the indictment, or a part thereof of greater value than fifty dollars in gold coin of the United States, by promising the Coopers that they, the defendants, would telegraph the same to some person in New York, who would use it in the purchase of stock for the Coopers; and if the defendants, at the time they obtained the money, intended to convert the money to their own use, and did subsequently, not regarding their promise, and in violation of it, convert the money to their own use, in accordance with their original intent so to do; and if the Coopers, at the time they parted with the money, did not intend to part with their property in the money, but only with the possession of it, and if after the money was delivered to the defendants, it was the property of the Coopers, and continued so to be until it was appropriated by the defendants to their own use—the defendants are guilty of grand larceny.

And, if all this has been established by the evidence submitted on the trial, beyond reasonable doubt, and if it has been further so established, that all this transpired in this city and county, the defendants should be declared guilty of grand larceny by your verdict.

The other facts are stated in the opinion.

*G. W. Tyler*, for Appellants.

The allegation in the indictment is, that the defendants did feloniously steal and carry away $2,000, the property of one William Cooper, and of Margery Cooper, his wife; while the evidence was, that said Coopers gave said $2,000 to the defendants, for the purpose of investing the same in stocks.

Admitting the truth of the facts, as shown by the evidence of the Coopers, still the defendants could not be justly convicted of the crime, under the indictment, for Mrs. Cooper, herself, testified, " I sent a letter to Mrs. Smallman, telling her that the money was ready. She sent up her servant with a message that she was sick, and that she would send up her husband. Up to that time I do not think I had any conversation with Mr. Smallman, about the money. He came up next day or the day after. We went into the parlor; we were there alone. Mr. Smallman said he was in a hurry; I went to the drawer and got the $2,000, and after the greeting of the day, I laid the money on the table. He took it with my consent—with my full and free consent."

If the defendants be guilty of anything, it is of embezzlement, or obtaining money by false pretenses, though the facts of the cause would not support either one of these charges.

If a person can be convicted of larceny under evidence which shows false pretenses, then what is the use of the statutory offense of false pretense? (*Kelly* v. *People*, 13 N. Y. Supreme Court, 500; *People* v. *Wyman*, 4 Hun, 511; Roscoe's Crim. Ev. 7th ed. pp. 453, 626 to 637.)

*Attorney-General*, for Respondent.

" To constitute the crime of larceny, there must be a felonious taking and carrying away the goods of another. It is supposed

to be *vi et armis, invito domino*.   But actual violence is not necessary ;   fraud may supply the place of force.   Thus, if the party obtain the delivery of the goods without an intent to steal, a subsequent conversion of them to his own use, while the contract subsisted, would not be felony ;   but if the original intent was to steal, and the means used to obtain the delivery was merely colorable, a taking under such circumstances would be felony.   So, if the goods were delivered originally upon a special contract, which is determined by the fraudulent act of him to whom they were delivered, or by the completion of the contract, a taking *animo furandi* afterward should be adjudged a felony."   (*Com.* v. *James*, 1 Pick. 362–384;   2 Wharton's Crim. Law, 1848;   *State* v. *De Freese*, 8 Am. Rep. 5 ;   2 Russ. Cr. L. 9th Am. ed. 102;   *Bassett* v. *Spofford*, 45 N.Y. 391;   *People* v. *McDonald*, 43 id. 64 ;   *Smith* v. *People*, 53 id. 113 ;   2 Bish. Crim. Law, § 813 ;   2 *Rex* v. *Good*, Car. & P. 422;   2 Bish. Crim. Law, § 809 ;   *Loomis* v. *People*, 67 N. Y. 322;   *People* v. *Hildebrand*, 56 id. 395 ;   *People* v. *Welch*, 17 Ill. 339 ;   *People* v. *Huber*, 57 Ind. 341;   *Regina* v. *Brown*, Beardly C. C. 616;   *People* v. *Abbott*, 53 Cal. 284.)

THORNTON, J. :

The defendants were indicted by the Grand Jury of the City and County of San Francisco for the crime of grand larceny. They were charged in the indictment with feloniously stealing, taking, and carrying away, contrary to the form, etc., 100 pieces of the current gold coin of the United States of the denomination of double eagles, or $20 pieces, and of the value of $20 each, said money being the property of William Cooper and Margery Wells Cooper.   The defendants pleaded not guilty to the indictment, and on the trial the jury found them guilty as charged.   They then moved an arrest of judgment, and for a new trial, which were denied.   Sentence was pronounced by the Court, from which sentence, and the order denying a new trial, this appeal is prosecuted.

On the trial several exceptions were reserved to the admissibility of the evidence, which we will proceed to consider.   The above-named Margery Cooper was called as a witness by the

prosecution, and examined.  On her cross-examination, counsel for the defendants offered, for the purpose of affecting her credibility, an affidavit made and signed by her on the 16th day of January, 1879.  It also came out on the cross-examination that the affidavit was written by one Carey, who presented it, and read it to the witness, when she signed it, and swore to it.  The evidence tended to show that at this time Carey was employed by the defendant, Amelia Smallman, to draw this affidavit, and have it signed and sworn to by the witness; afterward there was direct testimony to this effect.  On the redirect examination, the witness was asked as to the circumstances under which the affidavit was made, and what conversation she had with Carey about it.

The defendants objected to any conversation of witness with Carey in relation to this affidavit, which was had in the absence of defendant Amelia.  The Court overruled the objection, and admitted the evidence, to which the defendants excepted.  We see no error in this ruling.  It was proper to ask the witness as to every matter which occurred in relation to, and in connection with, the affidavit.  The conversation had about it while it was being prepared and signed, and the oath made to it, were parts of the transaction, which were as properly admissible as the affidavit itself.

The defendants, on the cross-examination of the above-named William Cooper, drew out the fact that the witness had consulted, in relation to the transaction out of which the indictment grew, F. E. Southerland, and in part developed what had occurred between them as to the matter.  The plaintiff was permitted to call out, on cross-examination, against the objection and exceptions of defendants, all that had taken place between the witness and Southerland in the consultation or consultations inquired about.  We see no error in this ruling of the Court.

Sarah Selleck was called as a witness by the defense.  It appears that she was called to impeach Margery Cooper by proving a statement contradictory to what Mrs. Cooper had deposed on the trial.  She was asked by defendants' counsel the following question; " Did Mrs. Cooper ever request you to go and see Mrs. Smallman in reference to any points in stocks? "  The prosecution objected to this question; the objection was sus-

tained, and defendants excepted. Nevertheless, the witness appears to have answered the question. She said: "I never had any conversation with Mrs. Cooper with reference to her procuring Mrs. Smallman to invest money for her in stocks."

This question was then put by counsel for defendants: "Did Mrs. Cooper ever ask you to intercede for her and get Mrs. Smallman to invest any money in stocks for her? to intercede with her?" To this the prosecution objected. The Court sustained the objection, and defendants excepted. This ruling is now assigned as error on behalf of defendants.

If this question was intended to impeach Mrs. Cooper, by showing she had made contradictory statements, the predicate had not been laid for so doing, by interrogating her in relation to them. If to show the relations existing between Mrs. Smallman and Mrs. Cooper, the character of those relations so clearly appears from the testimony which was adduced before the Court, that we cannot see that the defendants were injured by disallowing it. It does not appear that there was any conflict in the testimony as to the character of the relations existing between Mrs. Cooper and Mrs. Smallman; nor was any question made in relation to it. The testimony clearly shows that they were on intimate and friendly terms. The witness, (Mrs. Selleck) having just deposed that she never had any conversation with Mrs. Cooper with reference to her procuring Mrs. Smallman to invest money for her in stocks, we cannot discern any error committed by the Court in refusing to allow the question.

We find no error in the record or the rulings of the Court in relation to admitting or excluding testimony, nor did the Court err in refusing to advise the jury to acquit defendants at the close of the testimony for the People.

The refusal of the Court to grant a new trial was attacked for the errors above referred to, and on the further grounds that the verdict was contrary to law, and that it was contrary to the evidence—that the evidence clearly showed that there was no larceny.

The Court, at the instance of defendants, gave to the jury the following instruction:

"If the jury believe, from the evidence, that the $2,000 was delivered by Mrs. Cooper to Mr. Smallman, with the understand-

ing and agreement that the same was to be invested by him in stocks, and he did so invest it, you should find the defendants not guilty."

The defendants asked the Court to give the following, which was refused:

"If the jury believe from the evidence that Mrs. Cooper gave W. H. M. Smallman the $2,000 of her own free will, with the understanding and agreement that he was to invest the same or have the same invested in stocks, either in her own name or otherwise, then you should find the defendants not guilty."

This request was too narrow. If given, it would have withdrawn from the consideration of the jury the testimony connecting the other defendant with the matter under investigation. An instruction which goes to the acquittal of defendants must be broad enough to cover the essential facts of the case. There was no error in the refusal of this request, nor do we discover any error in the refusal of the request numbered two, (2) asked by the defendants.

We have fully examined and considered the charge which was given to the jury by the Court below, and find nothing in it which should induce a reversal of the judgment.

We cannot say that the verdict was against law or contrary to the evidence. There was conflict in the evidence, but there was not a lack of evidence.

The former Supreme Court to which this appeal was taken, as is true of this Court, was invested with appellate jurisdiction in such criminal cases as could come before it, on questions of law alone. (Constitution as amended in 1862, art. vi, § 4; Constitution of 1879, art. vi, § 4.) When there was no evidence to establish the charge set forth in the indictment, it would present a question of law, on which the former Court and this Court would be competent to act. This would not be the case where there was evidence tending to prove the guilt of the accused.

For the foregoing reasons the judgment and order must be affirmed, and it is so ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.