## ARCH ENGLISH v. THE STATE.

*No. 3522. Decided November 1.*

1. **Verdict—Judgment.**—Indictment for theft contained two good counts, the first alleging that the property was taken from the possession of R., and the second that it was taken from the possession of G. The verdict was a general one, finding defendant "guilty of theft as charged in the indictment." The judgment was likewise a general one for "theft of a horse as found by the jury." The verdict is assailed upon the ground that it fails to designate the count upon which the defendant was convicted. The contention is without merit. It is a rule of practice in this State that " a general verdict responds sufficiently to an indictment containing two good counts, and is likewise sufficient under an indictment containing one good and one bad count, inasmuch as it will be assignable to the former."

2. **Theft—Ownership—Possession—Charge of the Court.**—The proof shows that the horse was the actual property of G., but was taken from the possession of R., who was holding it for G. The court instructed, in substance, for conviction if the proof showed that defendant took the animal from the joint possession of G. and R., without the consent of each, and with intent to deprive each, etc. *Held*, correct.

3. **Same—Evidence.**—See the statement of the case for a power of attorney under which it is claimed the defendant assumed to act in the sale of the horse as the representative of the agent named therein; and the same for charges of the court with reference to the said power of attorney *held* sufficient and correct; and for a requested charge upon the same subject *held* to have been properly refused as upon the weight of evidence.

4. **Same.**—An issue raised on the trial was that throughout the transaction involving the taking and selling of the alleged stolen animal the defendant acted merely as a hired hand. See the statement of the case for charges of the court on the issue *held* sufficient and correct, and for requested instruction thereon which was properly refused.

5. **Same—Practice.**—It is not competent on a trial for theft for the State to prove another and distinct theft committed by the defendant at another time and place than that on trial.

APPEAL from the District Court of Jones. Tried below before Hon. J. V. Cockrell.

The conviction was for the theft of a horse, and the penalty assessed by the verdict was a term of five years in the penitentiary.

The brief of the counsel for the appellant sets out a correct summary of the facts adduced in evidence, and reproduces the general charges of the court and the special instructions discussed in the opinion. Only so much of the brief as treats of the questions decided upon this appeal is included in this report.

*Bassett & Muse,* for appellant.—Stripped of nonessentials the facts in evidence may be condensed as follows, to-wit:

The horse alleged to have been stolen was a brown mare branded J Z on left thigh, the property of Joe Gernigan and under the care, control, etc., of Henry Randolph. Dixon English also had authority over the Gernigan horses, which had never been revoked. The animal described by the evidence was a brown mare branded O E on the left thigh and W E on right shoulder. The criminative fact relied on by the State was the alleged alteration of the J Z into the O E brand. The evidence of ownership, possession, and identification was in substance as follows:

Joe Gernigan was the owner of a stock of horses branded J Z on left thigh, and ranging in Jones County, Texas. The recorded brand read in evidence was that of Gernigan, to-wit, J Z left thigh on horses; recorded September 3, 1889. Joe Gernigan gave Henry Randolph charge of said stock of horses in the spring of 1888. Henry Randolph took charge of said horses at said time, and had the care, control, and management of the alleged stolen mare when taken. Joe Gernigan received from Jim Newman in the summer of 1889 a brown mare in the O E brand. She had a W E brand on the right shoulder. Gernigan testified that it was his mare; that he "knew her by the brand;" that the O E brand showed the J in the O; that none of his horses had W E on them, and that he never did brand with W E.

Henry Randolph testified as follows: "I have seen the mare in question. I think she is a J Z mare. She looks like the mare, and I think is the mare I last saw in June or July, 1888, on "Dry Callie." The mare now has the O E brand on her left thigh. I think this is the Gernigan mare. I also recognized a small bay mare at Matador Ranch on the plains. She had the O E brand on left thigh. I know she is Joe Gernigan's mare, and I saw her the last time on the range on Dry Callie, in Jones County, about June or July, 1888. She and the mare now in controversy ran together, and were missed from the range about the same time. The Gernigan horses did not have the W E brand on them. They had only the J Z brand on the left thigh. The mare now has a W E brand on her right shoulder. I am not positive that the animal in controversy is Gernigan's, but I think so. I think I know the mare."

Joe Gernigan testified further that in 1887 or early in 1888 he got

Dixon English to look after his horses and brand the colts, and had never revoked the authority then given. That in the fall of 1889 he showed defendant the mare in controversy, and asked him if he had not sold an O E mare. He replied, "Yes; but don't understand me to say that that is the mare."

Neither Gernigan nor Randolph consented to the taking of the animals.

Simp Holloway testified that defendant and his brother Dixon English on June 4, 1889, had a drove of horses at the Matador Ranch, in Motley County, and sold a brown mare to Mr. Cochran for $25 and a horse to witness; that defendant executed a bill of sale to the mare and signed it A. O. Edwards, and said that he and Dixon English were brothers and partners. The mare was branded O E on left thigh, and had an old dim brand on right shoulder that looked like W E. "The horse I bought had W E branded on left shoulder, and a Spanish brand on him. The W E brand did not peel. Fifteen or twenty days after we bought the horses the O E brand on the mare peeled and showed J Z. The Spanish brand on the horse also peeled. The O E on the mare looked like an old brand when we bought her, but when it peeled it showed or looked to be a brand part of which was put on with a wet blanket, which is done by branding the animal with a hot iron through a wet blanket. The brand will swell up and look like an old brand, but will afterwards peel off. I afterwards saw the horses sold us in the possession of Joe Gernigan. J. F. Newman, a deputy sheriff, took the mare and horse from us about a month and a half after our purchase, and claimed the mare for Joe Gernigan. I have seen two brands put on with wet blankets, but don't remember seeing the animals afterwards. Dixon English was lying under a wagon, hurt, when defendant signed the bill of sale. I next saw defendant in Fisher County, where he lives, and called him Edwards. He told me his name was English."

J. M. Powell, a stockman, testified as an expert that brands put on with a wet blanket will peel in two or three weeks. Brands thus put on will leave the hair on, and the brand will swell up and show very distinctly; the hair will peel off in two or three weeks. Old brands burnt over will be smoother and plainer than those not burnt over. If J Z was run into O E, that part representing J Z would look plainer, and would not likely hair over it, while that part of the J Z not run over would likely have the hair on it.

McAdams testified that he saw defendant and his brother at Matador Ranch, in Motley County, on June 10, 1889. They gave their names as English. Dixon English at that time sold a bay mare branded O E on left thigh, and executed a bill of sale and signed it Dixon English. "I afterwards pointed her out to Henry Randolph. The O E brand on her never peeled off. Dixon English sold other horses. They also had with them and defendants together sold a mare branded W (with a straight

line diagonally across the letter) and L R on left side. That is the mare I now have in Anson, which witness Killeen identified. Defendant had nothing to do with the sale. Dixon English made the O E bill of sale."

Mr. Cook saw defendant and Dixon English near the T Ranch, ———— County, about May 4, 1889. They sold some horses and signed bills of sale as English. Defendant did not claim any of the horses. Dixon English was the man who did the business. "He told me that he lived in Fisher County."

Thomas Killeen testified that his father lost a black mare from the range in Fisher County in the fall of 1888. She was last seen near defendant's place, and was branded NK on left side. She now has L R on her, which was not on her when he last saw her. He recognized her as the mare now held by McAdams in Anson; was sure it was the mare. "I last saw the mare on the range in Fisher County in September, 1888. In May, 1889, I showed defendant and Dixon English our brand, and told him of the lost mare." This is the testimony upon which the conviction is set aside.

The State introduced in evidence the following certified copy of a power of attorney from A. O. Edwards to Dixon English, recorded in Fisher County February 15, 1890, to-wit:

"Know all men by these presents: That I, A. O. Edwards, of the county of Coleman, in the State of Texas, have made, constituted, and appointed and by these presents do make, constitute, and appoint Dickson English my true and lawful attorney for me and in my name, place, and stead to gather and have gathered all horses running in Taylor and adjoining counties in the State of Texas branded L R on left thigh, and all horses branded (N) on left shoulder, and all horses branded W E on right shoulder, and O E on left thigh, and one bay horse branded ——, and I think has W E on left shoulder; and my said attorney is hereby fully authorized to dispose of said stock and to make good and sufficient bills of sale to the same for me and in my name and stead; giving and granting to my said attorney full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present at the doing thereof, with full power of substitution or revocation, hereby ratifying and confirming all that my said attorney or his substitute may or shall lawfully do or cause to be done by virtue thereof.

"In testimony whereof I hereunto set my hand and seal, this 16th day of August, 1887.

[Signed]                                        "A. O. Edwards.

"Witness: W. W. Johnson."

Seal and certificate of acknowledgment of same date, in due form, by John Dillmonth, justice of the peace and ex officio notary public in and for Taylor County.

The defendant testified in his own behalf: "I first saw the O E mare in controversy in the pasture at my brother's when I came there the last of July or first of August, 1888. There were several head of the O E brand in the pasture at that time. We left home in May, 1889. On the trip my brother sold several other horses branded O E. We had thirty-five or forty head of horses, the most of them in my brother's brand—D–E. When the mare in controversy was sold I gave a bill of sale to the mare at the direction of my brother, Dixon English. He directed me to sign the bill of sale 'A. O. Edwards,' as he had a power of attorney to handle and sell these O E animals. I knew that my brother had the power of attorney from Edwards, and as my brother was hurt and lying down under the wagon I signed the bill of sale as he directed. I know that this animal (the brown mare) was in my brother's pasture when I came to the house about July, 1888. I had no interest in the horses, and was only employed by my brother as a hired hand, and if the animal was not his I knew nothing about it. I did not tell the witness Holliday that my brother and myself were partners, nor that my name was Edwards. My brother sold a brown mare and a bay horse branded O E, and a horse with a Spanish brand. All these horses had W E on the shoulder. The horses we carried up there were all in my brother's pasture when I came in July or August, 1888. The power of attorney from Edwards contained several brands, all of which had W E on them. Cochran wrote the bill of sale for the brown mare and I signed it. I don't know why I did not put the W E in the bill of sale." The defendant identified the copy of the power of attorney from Edwards to Dixon English, and said that the original had been recorded and had been brought with a certified copy of same to the trial at the last term of the court, that the original had been lost, and that he last saw same in the hands of Mr. Woodruff, his attorney.

Samples and Gee testified that they had seen the brown mare in question. She was branded O E on left thigh, and W E on right shoulder. The W E brand had the appearance of being old. Part of the O E brand looked old and part not so old. The left hand curve of the O looked old and was fully haired over; the right hand curve of the O looked to have been burned over, and was without hair, and this curve made a J. The upper and middle points of the E looked old and were haired over. Part of the J Z brand in the O E looked to have been burned later than the balance of the O E.

1. This evidence does not establish the identity and ownership of the alleged stolen horse, and is insufficient to overcome the presumption of innocence and the explanation and facts of the defense.

2. The judgment of conviction is not supported by the allegations of the indictment nor the evidence, in that, 1, the verdict and judgment is for "theft as charged in the indictment;" and, 2, the indictment alleges theft in two counts; in the first from the possession of Henry Randolph, in

the second from the possession of Joe Gernigan. The verdict of the jury failing to state upon which count of the indictment the defendant was convicted is reversible error. Keeler v. The State, 15 Texas Ct. App.; 111, 115; Littleton v. The State, 20 Texas Ct. App., 168, 171–175; Frazier v. The State, 18 Texas Ct. App., 434, 441–444; Bailey v. The State, 18 Texas Ct. App., 426, 430–435.

The court erred in its charge to the jury and in its omission to charge all the law applicable to the case in the following particulars:

The fifth clause of the charge erroneously instructed the jury to convict the defendant if he took the horse from the joint possession of Joe Gernigan and Henry Randolph, without the consent of each, and with the intent to deprive each, etc., which charge was not supported by the averments of the indictment nor the facts in evidence; and further, it does not appear upon which count of the indictment the defendant has been convicted.

The seventeenth and eighteenth clauses of the charge did not correctly state the effect of the power of attorney from A. O. Edwards to Dixon English introduced in evidence, and under which the defendant justified. Those clauses indicated the court's disbelief in the execution of the same by Edwards, and submitted the issue of its execution by the parties to it for the purpose of avoiding criminal prosecutions, without any evidence in support thereof, or that defendant was connected therewith; and further, in the seventeenth clause made the defendant's innocence depend upon the belief and good faith of Dixon English as to said power of attorney, and failed to instruct affirmatively upon the issue that if defendant believed that Dixon English had authority to take or dispose of said horse that defendant would be guilty of no offense; and further, the court erred in refusing the defendant's requested charges in relation thereto.

The fifth clause of the charge on ownership and possession was as follows, to-wit: If the jury  *  *  *  believe that Arch English  *  *  * did fraudulently take from and out of the possession of Joe Gernigan, and from and out of the possession of Henry Randolph, the horse charged to have been stolen, without the consent of said Jernigan and without the consent of the said Randolph, and with the intent to deprive said Gernigan and said Randolph of the value of said horse and to appropriate the same to his own use and benefit, you will find the defendant guilty and assess his punishment at  *  *  *  and unless you so believe you will find the defendant not guilty.

The indictment charged the theft of a horse in two counts. In the first count the ownership and possession were alleged to be in Henry Randolph; in the second count the ownership and possession were alleged to be in Joe Gernigan. The identity of the horse being assumed the evidence showed ownership in Gernigan, and possession—that is care, control, and management—in Randolph. But prior to Randolph's possession Dixon English,

brother of defendant, had looked after Gernigan's horses at his instance, and his authority had never been revoked. The defendant was sought to be circumstantially incriminated by his supposed co-operation with Dixon English in the alleged taking. There was no charge by the court instructing on embezzlement upon this phase of the case, nor any charge submitting the issue of theft upon each or either count in the indictment.

The seventeenth and eighteenth clauses of the charge instructed upon the power of attorney from Edwards to Dixon English introduced by the State as follows:

"(17) The power of attorney introduced in evidence if made by A. O. Edwards to Dixon English, and if Dixon English, acting in good faith, believed he had authority to gather the horses with brands described in said power of attorney, and so believing gathered the horse in controversy and sold the same, he would be guilty of no offense, and the defendant acting with him would not be guilty.

"(18) But should the jury believe that said power of attorney introduced in evidence was executed by the parties to it, in order to protect the parties to it from a criminal prosecution, and that Dixon English, knowing said instrument to be so executed, took possession of said horse with the intent to commit the crime of theft, and defendant, knowing the guilty intention of Dixon English in the act of taking, aided said Dixon English in the taking and disposing of said horse, would make him guilty as a principal offender with Dixon English; and if you believe that Dixon English is guilty of the theft of said horse (as theft is defined in the foregoing charge), and that defendant, knowing the unlawful intent as given you above, aided Dixon English as given you in this charge, you will find the defendant guilty and assess his punishment as given you above at not less than five nor more than fifteen years. Unless you so believe you will find the defendant not guilty."

The court refused to give the defendant's requested charge, as follows:

"The power of attorney from A. O. Edwards which has been introduced in evidence by the State was such as would, if genuine, have authorized Dixon English, or the defendant under his instructions, to sell the property embraced therein and to sign the name of Edwards to the bill of sale. Said power of attorney purports to have been duly executed and acknowledged by Edwards, and there is no evidence before you showing or tending to show that the same was not genuine or that it was not duly acknowledged."

The court erroneously in the fifth clause of the charge, over exception, and under an indictment alleging by separate counts the separate ownership and possession of Randolph and Gernigan respectively, instructed for conviction if the taking was from the joint possession of Randolph and Gernigan, and erred in failing to submit the issue of theft upon each count of the indictment, and in not requiring the jury to find upon which

count the defendant was guilty.   Keeler v. The State, 15 Texas Ct. App., 111, 115; Boren v. The State, 23 Texas Ct. App., 28, 33–36; Littleton v. The State, 20 Texas Ct. App., 168, 171–175; Frazier v. The State, 18 Texas Ct. App., 434, 441–445; Bailey v. The State, 18 Texas Ct. App., 426, 430–435; Sims v. The State, 10 Texas Ct. App., 131, 158, 165; Dalton v. The State, 4 Texas Ct. App., 333, 336; Hickman v. The State, 22 Texas Ct. App., 441–442.

Said charge did not conform to and was not limited by the allegations of the indictment, and is at variance with the evidence and the verdict and judgment in that

(1)   The charge was upon theft from the joint possession of Randolph and Gernigan.

(2)   The indictment alleges theft separately from either Randolph or Gernigan.

(3)   The evidence showed ownership in Gernigan and possession in Randolph.

(4)   And the verdict and judgment of conviction is for theft "as charged," viz., from both Randolph and Gernigan, and is a conviction for two offenses.   Jones v. The State, 22 Texas Ct. App., 680, 682–683; Steagal v. The State, 22 Texas Ct App., 464; Willson's Crim. Stats., Code Crim. Proc., art. 667 and secs. 2335–2337.

The court erred in refusing defendant's requested charge upon the Edwards power of attorney, and in not affirmatively and correctly stating the effect thereof in the seventeenth and eighteenth clauses of the charge, in that, 1, the issue of its execution to avoid criminal prosecutions was submitted without evidence; 2, the innocence of defendant was hinged upon the good faith of Dixon English thereunder, and not upon the defendant's good faith and belief in the genuineness of said instrument, and the charge was calculated to impress the jury with the court's disbelief in its genuineness.   Bond v. The State, 23 Texas Ct. App., 180; Irvine v. The State, 20 Texas Ct. App., 12, 41; Willson's Crim. Stats., sec. 2338.

The court erred in refusing defendant's requested charges upon the issue of hired hand raised by the evidence, and in failing to distinctly and affirmatively present said issue in his charge.

The charge of the court upon the issue of hired hand was as follows:

The tenth clause:  "Or should the jury believe that Dixon English was guilty of the theft of the horse charged to have been stolen, and you further believe from the evidence that at the time of the alleged taking the defendant was a hired hand in the employ of Dixon English, and assisted the said Dixon English in taking possession of said horse and disposing of same under the instruction and direction of Dixon English, and at the time of said taking Arch English believed that said horse was the property of Dixon English and had no knowledge of any criminal intent

of Dixon English in the alleged taking, you will find the defendant not guilty."

The eleventh clause.   "The court further instructs the jury on this branch of the case that the fact that the defendant was a hired hand will not in any degree lessen or excuse the offense, if he knew that the said horse was not the property of Dixon English, and that said Dixon English was stealing said horse, and, knowing the unlawful intent on the part of Dixon English, aided and assisted in the commission of the offense."

The defendant's refused charge upon the issue of hired hand was as follows:

(1)   If the evidence shows that the defendant was a hired hand in the employ of Dixon English, and that said Dixon English was not in fact the owner of the property but was stealing it, if that fact has been proved, and that at the time he took possession of the property, if he did so, that the defendant knew of such unlawful act and purpose of Dixon English, and aided and assisted him in such unlawful act and purpose, then the fact, if it be a fact, that the defendant was in the employ of said Dixon English as a hired hand will not excuse or palliate his offense; but if on the other hand the evidence shows that the defendant was such hired hand and had no knowledge of the criminal act or intent of Dixon English, if such has ever been shown, then the defendant can not be convicted and you will return a verdict of not guilty.

(2)   The defendant can not be convicted of the theft of the property alleged to have been stolen unless the evidence shows beyond a reasonable doubt that he participated in the original taking, no matter what connection he may have had with the property thereafter.

The court admitted in evidence, over the defendant's exception, the testimony of the witness Killeen to the effect that his father owned an animal which was stolen from its range in Fisher County, Texas, in September, 1888, being the same animal bought by McAdams from Dixon English and defendant; it being shown that the time and place of said alleged theft was different from that of the theft charged.

*W. L. Davidson*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—There were two theft counts contained in the indictment, the first alleging that the property was taken from the possession of Henry Randolph, and the second that it was taken from the possession of Joe Gernigan.   In the verdict the defendant was found "guilty of theft as charged in the indictment," and the judgment is a general one for "theft of a horse as found by the jury."   It is insisted that the verdict of the jury failing to state upon which count of the indictment the defendant was convicted is reversible error, and we are cited to a number of cases in which it was held that the judgments should

be reversed because of variance between the allegations and proof as to ownership, or rather possession of the party from whom the property was taken. These cases do not apply to the question here raised. It is not a question of variance. Both counts were good, and "under the practice in this State a general verdict responds sufficiently to an indictment containing two good counts, and is likewise sufficient under an indictment containing one good and one bad count, inasmuch as it will be assignable to the former." Boren v. The State, 23 Texas Ct. App., 28; Code Crim. Proc., art. 712. There are, it is true, certain well defined exceptions to this rule, as when the counts of an indictment charge an offense which is a felony, but which includes other offenses which are misdemeanors, and all the offenses covered by the indictment are submitted to the jury by the charge of the court, a general verdict of guilty applicable to either of the offenses is uncertain and will not support a judgment. Guest v. The State, 24 Texas Ct. App., 530; Hickman v. The State, 22 Texas Ct. App., 441.

No such uncertainty exists as to the matter here presented, and if either of the counts are sustained by the proofs the general verdict and judgment will be applied to and be held sufficient under that count. The evidence shows that the horse was the property of Gernigan, who was the general owner, but was taken from the possession of Randolph, who was in possession of and holding the same for Gernigan. This phase of the question of ownership and possession was correctly presented in the fifth clause of the charge of the court, which it is strenuously insisted was erroneous. The charge was directly applicable to the facts adduced in evidence to support the first count of the indictment and was the law of the case as to said count. Willson's Crim. Stats., sec. 2335; Chamberlain v. The State, 25 Texas Ct. App., 398.

Under the facts of the case we are of opinion that the charge of the court sufficiently presented the law relative to the power of attorney from A. O. Edwards to Dixon English introduced in evidence by the State, and that no error is made to appear in the court's refusal of defendant's special requested instruction on this phase of the case. Said special instruction was upon the weight of evidence. This power of attorney purported to have been executed and acknowledged on the 16th day of August, 1887. The horse was alleged to have been stolen in June, 1889. The indictment was returned the 10th day of February, 1890, and said power of attorney was not filed and recorded until the 15th day of February, 1890, five days after the finding and presentment of the indictment.

Upon the phase of the case tending to establish that defendant was a hired hand of Dixon English we are of opinion that as given the charge of the court sufficiently and pertinently presented the law, and that the court did not err in refusing defendant's special instructions on this branch of the case.

We will not discuss the other several interesting questions presented with reference to defendant's application for continuance and the organization of and conduct of the jury, since these are questions not likely to arise upon another trial.

There is one material error submitted which, in our opinion, requires that the conviction should be set aside and a new trial awarded appellant. After the evidence for the State and defendant had been introduced, all of which tended to show that if the animal in question had been stolen, that it was stolen from its range in Jones County, in June or July, 1888, the State, over objection of defendant, was permitted to prove by one Killeen that an animal belonging to his father was stolen from its range in Fisher County, some eight and a half miles from where the Randolph horse was stolen, in the month of September, 1888, which mare one McAdams testified he had purchased from defendant and his brother in Motley County in June, 1889, about the same time they sold the animal in question. Defendant's objections to this testimony was that the two animals were not taken at the same time and place, that the two transactions were separate and independent, and that the evidence was not in rebuttal to any evidence offered by defendant.

As tending to establish identity in developing the *res gestæ,* or to prove guilt by circumstances connected with the theft, or to show the intent of the accused with respect to the property described in the indictment, it is competent for the State to prove the theft by defendant of other property at the same time and place of the theft in question, but it is not competent to prove a distinct theft committed by defendant at another time and place. "Such evidence does not tend to serve legitimately to throw any light upon the particular theft for which defendant is on trial." Williams v. The State, 24 Texas Ct. App., 412; Neeley v. The State, 27 Texas Ct. App., 315.

For the admission of the illegal evidence as above shown, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.