THE STATE OF KANSAS v. FRANK WOODRUFF.

1. LARCENY — *Sufficient Taking and Carrying Away.* Where a person obtains possession of a horse with the consent of the owner, by falsely and fraudulently pretending that he wants to use him a short time for a temporary purpose, and will return him to the owner at a specified time, when in fact he intends to and does wholly deprive the owner of the horse and appropriates him to his own use, there is such a taking and carrying away as to constitute the offense of grand larceny.

2. ——— *Immaterial Evidence.* The admission of improper and immaterial evidence, not prejudicial to the complaining party, is not a ground of reversal.

*Appeal from Johnson District Court.*

PROSECUTION for grand larceny. From a conviction, on May 15, 1891, the defendant, *Woodruff*, appeals. The opinion states the facts.

*F. R. Ogg*, for appellant.

*S. D. Scott*, county attorney, for The State.

The opinion of the court was delivered by

JOHNSTON, J.: Frank Woodruff was convicted of grand larceny. The information was filed in December, 1890, and charged Woodruff with stealing a roan mare, the property of F. F. Murray, on August 9, 1887, and alleged that since about the time the larceny was committed Woodruff had been a fugitive from justice and absent from the state. At the trial, testimony was given that Woodruff came to the house of J. C. Murray in the latter part of July, 1887, and was employed by Murray to work upon his farm. On the morning of August 9, 1887, he was sent into a field to cut corn for J. C. Murray, but instead of doing so he went to the home of F. F. Murray, who was a son of J. C. Murray, and told him that he had the toothache and desired to go to Olathe to have the tooth extracted, and he said that he wanted to hire a horse to ride to Olathe, stating that he would return the animal about noon of that day. Murray consented, and assisted in saddling and bridling the mare, but he never saw the mare afterward, and never saw the defendant until the fall of 1890, when he was brought from Illinois upon requisition of the governor of the state. When the defendant did not return at noon with the mare, Murray went to Olathe, and with the aid of the sheriff made a fruitless search for Woodruff and the mare. He was not seen at Olathe on that day, but was seen by one witness in possession of the mare at the town of Morse, Kansas. The mare has never been found or recovered.

The defendant insisted that under these facts there was no such trespass and taking as was necessary to constitute the offense of larceny; and he asked the court to charge the jury that if he obtained the possession of the mare with the consent of the owner, and afterward appropriated her to his own use, he could not be convicted of larceny. The court instructed the jury as follows:

" If you believe from the evidence that defendant obtained possession of the mare charged in the information to have been stolen under the pretense that he wanted to ride to Olathe, but in reality with intent to convert her to his own use, and to deprive the owner of his property, that would be a sufficient taking and carrying away to constitute the crime of grand larceny."

Further along in the charge the court instructed that —

" If you are satisfied from the evidence beyond a reasonable doubt that the owner of the mare alleged to have been stolen intended only to part with the possession of the mare, and not with the ownership, and that the defendant took possession of the mare not for the purpose, as he stated, of riding to Olathe and return, but with intent to convert the mare to his own use and to deprive the owner of his property therein, and that in pursuance of such intent he did convert the mare to his own use, then you ought to find the defendant guilty of grand larceny, as charged in the information."

The instructions given by the court were warranted by the evidence, and correctly stated the law of the case. To constitute larceny there must be an intentional taking, without the consent of the owner — an intentional fraud and appropriation of the property to the use of the defendant. If the owner consents to part with the property there can be no larceny; but the consent must be free and voluntary. Where his consent to surrender possession for some temporary and legitimate purpose is obtained by a trick or a fraud, and the taker intends to deprive the owner of his property and convert the same to his own use, the consent is a nullity, out of which no legal possession or right of possession against the owner can arise. According to the testimony on which the verdict in

this case rests, there was no voluntary surrender of the possession of the property for the purposes intended by the defendant; hence the taking was tortious and against the will of the owner.   The jury were warranted in inferring that the defendant never intended to go to Olathe for the purpose of having a tooth extracted, and never intended to return the mare to the owner, but that his real purpose was to steal the mare and convert her to his own use.   According to the testimony, he never went to Olathe, never returned the mare, and it appears that he fled from Kansas and took refuge in the state of Illinois, remaining there until he was found and extradited for the commission of this offense.   We think that the evidence is sufficient to sustain the verdict, and that the defendant has no cause to complain of the charge of the court. (*The State v. Williams*, 35 Mo. 229; *The State v. Coombs*, 55 Me. 477; *The State v. Humphrey*, 32 Vt. 571; *People v. Shaw*, 57 Mich. 403; *People v. Smallman*, 55 Cal. 185; *Smith v. People*, 53 N. Y. 111; *Miller v. Commonwealth*, 78 Ky. 15; *People v. Smith*, 23 Cal. 280; *English v. The State*, 15 S. W. Rep. 649; *The State v. Anderson*, 25 Minn. 66; 12 Am. & Eng. Encyc. of Law, 770.)

The introduction in evidence of a postal-card notice given by the sheriff, offering a reward for the stolen mare, giving a description of her, and a description of the defendant, is another ground of complaint.   It was offered in connection with the evidence of the under-sheriff, who testified that at the instance of Murray, and while he had the warrant in his hands, he searched for the defendant and the mare in and about Olathe, and to aid in finding them they had printed a large number of such postal cards, and distributed them over the states of Kansas and Missouri.   It was competent to show the search for the defendant, and that he fled from the state, but a copy of the printed postals which were mailed was hardly competent evidence.   The reception of the notice, however, was not prejudicial to the defendant, as the testimony conclusively showed that he obtained the mare upon the representation that he was going to Olathe, that he did not go to

Olathe, that he never returned the mare to her owner, and that he fled the state and became a fugitive from justice. Under such a state of facts, the reception of the printed postal was immaterial and harmless.

There are no other objections which require notice, and finding no error in the record, the judgment of the district court will be affirmed.

All the Justices concurring.