## James Hughes v. The Territory of Oklahoma.

(Filed Feb. 11, 1899.)

1. LARCENY — *Domestic Animals — Intent — Instructions.* An instruction that: "The law presumes every man to be innocent, when accused of crime, until his guilt is made to appear, to the satisfaction of the jury, by competent evidence, beyond a reasonable doubt; and the burden is upon the Territory in this case to establish, to your satisfaction, by competent evidence, beyond a reasonable doubt, the guilt of the accused of the crime charged in this indictment. While the law presumes every man to be innocent, until his guilt is thus established, on the other hand it presumes every act which in itself is unlawful to have been criminally intended; and therefore it is not necessary in this case that the Territory should establish the intent. If they do establish to your satisfaction, from the evidence, beyond a reasonable doubt, that the defendant took this animal from the possession of Mr. Ajdrina, the law will presume that he did it with the intent to deprive the owner of his property therein,"—is incorrect. Intent, where one is indicted for stealing, is an issue of fact, which the jury must determine from all of the facts appearing upon the trial; and it is for the jury to say in each case as to whether or not the felonious intent to steal existed at the time the property was taken.

2. STEALING DOMESTIC ANIMALS—*Offense Distinguished.* Section 1, art. 1, ch. 20, Session Laws of Oklahoma, 1895, which provides "that if any person shall steal any stallion, mare, colt, gelding, ridgeling, or any ass, genet, or mule, or any bull, cow, calf, steer or stag, he shall be guilty of a felony, and, on conviction thereof, shall be punished by confinement in the territorial penitentiary for a term of not less than one nor more than ten years," creates a distinct and separate offense from larceny, as defined by the Statutes of Oklahoma of 1893, and does not make the stealing of the domestic animals named in such act grand larceny, without regard to value.

(Syllabus by the Court.)

*Error from the District Court of Washita County; before John C. Tarsney, District Judge.*

*John I. Dille, C. O. Blake* and *Smith & Baker,* for plaintiff in error.

*Harper S. Cunningham, Attorney General* and *F. B. Duke, County Attorney,* for defendant in error.

James Hughes was convicted of cattle stealing and appeals.   Reversed.

Opinion of the court by

BURWELL, J.:   James Hughes was indicted, tried, and convicted in the dictrict court of Washita county for the crime of stealing a cow, and was sentenced to serve a term in the territorial penitentiary.   From this judgment and sentence he appealed to this court, and prays a reversal on account of alleged errors in the instructions.

The first instruction that we will consider is as follows: "The law presumes every man to be innocent, when accused of crime, until his guilt is made to appear, to the satisfaction of the jury, by competent evidence, beyond a reasonable doubt; and the burden is upon the Territory in this case to establish, to your satisfaction, by competent evidence, beyond a reasonable doubt, the guilt of the accused of the crime charged in this indictment. While the law presumes every man to be innocent, until his guilt is thus established, on the other hand it presumes every act which in itself is unlawful to have been criminally intended; and therefore it is not necessary in this case that the Territory should establish the intent. If they do establish to your satisfaction, from the evidence, beyond a reasonable doubt, that the defendant took this animal from the possession of Mr. Ajdrina, the law will presume that he did it with the intent to deprive the owner of his property therein."

It is urged that this instruction is defective, and prejudicial to the defendant, in that it instructs the jury

that intent need not be established; that it is presumed from an unlawful taking. The instruction may have been framed by the trial court upon the theory that intent was not an ingredient or element of the crime of which the defendant was being tried. In order that we may fully understand the issues presented, we will have to look to the language of the statute which creates the offense. It is as follows: "That if any person shall steal any stallion, mare, colt, gelding, ridgeling, or any ass, genet or mule, or any bull, cow, calf, steer or stag, he shall be guilty of a felony, and, on conviction thereof, shall be punished by confinement in the territorial penitentiary for a term of not less than one nor more than ten years." (Sess. Laws Okla. 1895, ch. 20, art. 1 Sec. 1.) The statute does not say one word about intent. Intent is nowhere expressed in the entire act. And this court has held that where a statute creates an offense, and does not make intent a necessary ingredient of such offense, it is unnecessary to plead or prove it. (*Garver v. Territory*, 5 Okla. 342, 49 Pac. 470; *Asher v. Territory*, 7 Okla. 188, 54 Pac. 446.) But does this offense fall within that rule? The statute says "that if any person shall steal any stallion," etc., "he shall be guilty of a felony, and, on conviction thereof, shall be punished by confinement in the territorial penitentiary," etc.

What did the legislature mean when it used the word "steal"? There is nothing about the act in which the word appears to indicate that it was intended to place upon it a meaning different from that given to it in its ordinary and legal use. As this word is not defined by our statutes, we will have to look to the lexicographers and law writers for light as to its meaning. The Ameri-

can & English Encyclopedia of Law (volume 23, p. 555) says: "The word 'steal' has a uniform signification, and in common, as well as legal, parlance, means the felonious taking and carrying away of the personal goods of another." And. Law Dict.: "Steal: To commit larceny." Webster's International Dictionary defines the word thus: "Steal: To take and carry away feloniously; to take without right or leave, and with intent to keep feloniously; as to steal the personal goods of another; to practice, or be guilty of, theft; to commit larceny or theft." The same author defines "larceny" to be "the unlawful taking and carrying away of things personal, with intent to deprive the right owner of the same; theft." Blackstone uses the words "larceny," "steal" or "stealing," and "theft," interchangeably. American & English Encyclopedia of Law (volume 12, p. 761): "Larceny is the wrongful and fraudulent taking and carrying away, by any person, of the mere personal goods of another from any place, with a felonious intent to convert them to his (the taker's) use, and make them his property, without the consent of the owner. As a general rule, 'stealing' and 'larceny' are synonymous terms," etc. Bishop, in his work on Criminal Law, (volume 1, p. 431,) defines larceny to be "the taking and removing, by trespass, of personal property, which the trespasser knows to belong, either generally or specially, to another, with the intent to deprive such owner of his ownership therein, and, perhaps it should be added, for the sake of some advantage to the trespasser,—a proposition on which the decisions are not harmonious." 2 Russ. Crimes, p. 146: "In a late work of great learning and research, larceny is defined to be 'the wrongful or fraudulent taking and carrying away, by any person, of

the mere personal goods of another, from any place, with a felonious intent to convert them to his (the taker's) own use, and make them his own property, without the consent of the owner, and in a case of recent occurence, which was reserved for the consideration of the twelve judges, the learned judge who delivered the opinion said that the true meaning of larceny is the 'felonious taking the property of another, without his consent, and against his will, with intent to convert it to the use of the taker.' "

An examination of the authorities will show that "larceny" and "stealing," at common law, had the same meaning; and consequently stealing, as here defined, is the wrongful or fraudulent taking and removing of personal property, by trespass, with a felonious intent to deprive the owner thereof, and to convert the same to his (the taker's) own use. The crime of larceny, however, by our statutes, has been widened to a considerable extent, as will be shown by section 2371 of the 1893 Statutes, which is as follows: "Larceny is the taking of personal property, accomplished by fraud or stealth, and with intent to deprive another thereof." Section 2373, and other sections following, also throw some light upon the matter before us. We will therefore here quote them:

"Sec. 2373. Larceny is divided into two degrees; the first of which is termed grand larceny, the second petit larceny.

"Sec. 2374. Grand larceny is larceny committed in either of the following cases: First, when the property taken is of value exceeding twenty dollars. Second, when such property, although not of value exceeding twenty dollars in value, is taken from the person of another. Larceny in all other cases is petit larceny.

"Sec. 2375. Grand larceny is punishable by imprisonment in the territorial prison not to exceed five years.

"Sec. 2376. Petit larceny shall be punished by a fine of not less than ten dollars or more than one hundred dollars, or imprisonment in the county jail not to exceed thirty days, or by both such fine and imprisonment, at the discretion of the court."

These different sections define larceny, divide the crime into two different degrees, and provide the punishments therefor.

The contention of counsel for the appellant is that when the legislature said "that if any person shall steal any stallion, mare, colt," etc., "he shall be guilty of a felony," it meant the same as if it had said "that if any person shall steal any stallion, mare, colt," etc., "he shall be deemed guilty of grand larceny." In other words, it is contended that the word "steal," in act of 1895, is synonymous with the word "larceny," as used in the act of 1893; the only difference being that the act of 1895 makes the stealing of all domestic animals named in the act grand larceny, without regard to value. This contention cannot be sustained. The legislature has modified the meaning of the word "larceny," as used in the crimes act, so that the taking of personal property, accomplished by fraud or stealth, and with intent to deprive another thereof, is larceny, regardless of whether or not it was taken for the purpose of depriving the owner thereof, or for the purpose of converting it to the use of the taker. Therefore, while stealing and larceny at common law were synonymous terms, our statute has given to the word "larceny" a much broader meaning than it then had; while "steal" or "stealing" has not been defined by our statutes, and must be construed according to its common-law meaning. This view is supported by the authorities. Bish. St. Crimes, Sec. 413: "If a statute, in gen-

—3

eral terms, provides that 'whoever shall be guilty of lar-
ceny' shall be punished in a manner pointed out, the of-
fense which it creates is the same in its entire extent and
its limitations as larceny at the common law.   For ex-
ample, since larceny at the common law cannot be com-
mitted by taking and carrying away, in one transaction,
anything which pertains to the realty, it cannot under the
statute.   Therefore, under such a statute, it is not lar-
ceny to take and carry away, with a felonious mind, cop-
per pipe which was attached to the freehold.   *   *   The
doctrine, in brief, is that where the indictment is really
upon the statute, instead of being at the common law,
while the statute is simply looked to on the question of
the punishment, it must be in the common-law form, but
conclude against the form of the statute." And again,
in section 363 of the same work, it is said:   "Still, there
is constant occasion to refer to the common law to ascer-
tain the meaning of the statute in respect of the act; for
we have seen that, if a statute employs a word or phrase
which has already been used in the common law or in
another statute, it is to be understood in the meaning
previously determined.   Thus, there are no common-law
crimes against the United States; yet the acts of congress,
instead of minutely defining particular   crimes,   often
make it penal, for example, to commit robbery or larceny
or arson, and so on,—employing words of a well-known
common-law meaning.   In such a case the court looks
to the common law to ascertain the nature and limits of
the offense.   And a robbery under the statute differs in
no respect from a robbery purely at the common law."

Taking into consideration the rule of construction as
enunciated by Mr. Bishop, we must conclude that when

the legislature used the word "steal" in the act of 1895, under which the defendant was indicted, tried, and convicted, it had in mind the crime of stealing or larceny as it existed at the common law, and not larceny as defined by our Statutes of 1893. And this is made more apparent when we take into consideration the reasons for the enactment of the law. The act is entitled "An Act for the Better Protection of Stock Raisers." Cattle stealing had become so common, particularly in the western part of the Territory, that it became necessary for the legislature to pass a law which would more fully protect those who had herds of cattle in the western counties, the general law on larceny being inadequate. By this act a new crime was incorporated into our statute,—one that was independent of our statutory crime of larceny. Had it been the intention of the legislature to simply make the stealing of these domestic animals grand larceny, without regard to value, it would have said so, and the punishment prescribed in grand larceny would have been inflicted upon those convicted of the offense; but the legislature deemed this crime of stealing domestic animals a more serious offense than grand larceny. In fact, the punishment prescribed therefor is twice as great as that provided for in grand larceny, except larceny from the person, in which case the punishment is the same, and larceny from a dwelling house or vessel, in which event it might be eight years. One convicted of larceny under the statute cannot, except in cases of larceny from the person or from a dwelling house or vessel, be sentenced to a term of more than five years in the penitentiary, no matter how great the value of the property taken; but, on the other hand, one who steals a calf, even if it is

not worth more than a dollar, can be sentenced to a term of ten years in the penitentiary. There is a reason for this difference. The persons who steal cattle and other domestic animals, as a rule, steal them from the owners thereof, with the intent to appropriate the same to their own use. They steal for gain,—for the purpose of selling and profiting thereby. In fact, the persons that the statute was more particularly intended to punish were the persons who were stealing cattle and other domestic animals as a means of livelihood; and the law on larceny, as divided into degrees under the Statutes of 1893, was wholly inadequate. Many of the animals stolen were not of the value of more than $20; and therefore the law did not prevent the commission of the crime, and the punishment for petit larceny was not sufficient to prevent the larceny of such animals. Hence the creation of the statute of 1895. But the two acts are entirely different. The one has no reference to the other in any way: They are separate and distinct crimes. By construing them in this way, each is a perfect act within itself; but by constructing the act of 1895 to be grand larceny, without regard to value, you destroy the degrees of larceny as fixed in the statute, when applied to certain kinds of personal property, viz. domestic animals. This cannot be done without disregard of well-known rules of statutory construction, which are—First, that statutes in *pari materia* are to be construed together; and, second, that an existing statute is not repealed by the passing of a subsequent one pertaining to the same matter unless the two are so inconsistent that they cannot stand together, in which case the latter one prevails. If, however, the act of 1895 is to be given the construction herein suggested,

then the domestic animals named in the act may be either the subject of larceny, as defined in the 1893 Statutes, or if taken under such circumstances and conditions as would constitute larceny at common law, it would constitute the crime of stealing, under the act of 1895.

To illustrate: If the property were of the value of $20 only, or less, the offender could be punished for petit larceny; if of the value of more than $20, he could be punished for grand larceny, or, if the facts were strong enough to warrant it, he could be indicted and tried under the statute of 1895, which makes the stealing of the domestic animals named therein a felony, no matter what the value of the property stolen may be. This view is not unsupported by the authorities. (*Kollenberger v. People*, [Colo. Sup.] 11 Pac. 101; *Brown v. State*, [Neb.] 51 N. W. 1028; *State v. Arnold*, [Neb.] 47 N. W. 694.)

The only difference between the crime of stealing a domestic animal under the act of 1895, and larceny at the common law, is that this act abolishes the degrees of the crime, and makes the stealing of any of these animals a felony, without regard to the amount of their value. By this, however, we do not mean to convey the idea that a thing which has no value can be stolen, although there are some authorities which hold that it is neither necessary to allege nor prove value, except for the purpose of fixing the degrees of the crime. But this question is not now before us. Several of the other states have passed laws similar to the act of 1895, which have been constructed by their respective courts, but the wording of those statutes in every case is so different from the one before us that the decisions of the courts thereon fail to assist us in the construction of the act referred to

above. When these two acts are construed in the way above pointed out, they are in perfect harmony, and can be measured by correct legal rules. But if the act of 1895 only makes the stealing of the animals named therein grand larceny, as defined by our Statutes of 1893, then the degrees of larceny cease to be measured by the value of the property stolen, and our statutes on larceny would be inconsistent and wholly wanting in any fixed rule.

Having arrived at the conclusion that the act of 1895 creates a separate and distinct offense from larceny, as defined by our Statutes of 1893, we will now consider as to whether intent may be inferred, or must it be proved, the same as any other fact? It is said in Bishop on Criminal Law, (volume 2, sec. 840): "We saw in the preceding volume that larceny requires the concurrence, with the act, of two intents, namely, a general one to do the trespass, and a particular one. Commonly, however, when speaking of the intent, in larceny, we mean the particular intent; and so shall we through the following sections. This particular intent is called 'felonious.' Without it there can be no larceny. 'What is meant by "felonious intent," ' said Read, J., in a North Carolina case, 'is a question for the court; and, after the court defines that, then it is for the jury to say whether (the defendant) had such intent.' " 3 Greenl. Ev. p. 164, sec. 157: "In the second place, as to the felonious intent. And here a distinction is to be observed between larceny and mere trespass, on the one hand, and malicious mischief, on the other. If the taking, though wrongful, be not fraudulent, it is not larceny, but it is only a trespass, and ought to be so regarded by the jury, who alone are to find the intent, upon consideration of all the circumstances," etc. ·

The above citations show clearly that, where intent is a necessary ingredient of the crime, it is necessary to prove it beyond a reasonable doubt, the same as any other element of the crime. Now, the trial court in this case told the jury, in the instruction quoted, that "if they (the Territory) do establish to your satisfaction, beyond a reasonable doubt, that the defendant took this animal from the possession of Mr. Ajdrina, the law will presume that he did it with the intent to deprive the owner of his property therein." If this were the rule, then, if the defendant took the animal, no matter what his intentions were, the law will presume that he did it with the felonious intent to steal it. That is not the law. Defendant may have taken the animal to play a joke on the owner, or he may have taken it for the purpose of only temporarily depriving the owner of it, as in the case of *Mitchell v. Territory,* 7 Okla. 527, 54 Pac. 782. Such taking is not stealing. The intent which must be present in all such cases would be lacking. The intent to deprive the owner thereof, and to appropriate the property, was the gist of the crime; and, as to whether or not such intent existed, the jury alone should have determined. See 8 Am. & Eng. Enc. Law (New Ed.) p. 287: "When the statement of the act itself includes a knowledge of the illegality of the act, no averment of knowledge or bad intent is necessary. But, where an act becomes criminal only through the existence of a specific intent, such intent must be proven. It should be averred in the indictment. And its existence is a question of fact for the jury, under all the circumstances."

In the case of *People v. Soto,* 53 Cal. 415, the defendant had entered a bedroom where a woman and her small

children were sleeping, after they had retired and the lights were extinguished. He was indicted and tried for burglary. He had taken nothing from the room. The woman testified that she thought he had entered her room for the purpose of having sexual intercourse with her. But, notwithstanding her evidence to that effect, the jury found him guilty as charged. The court, on appeal, said that the intent with which the defendant entered the building was a question of fact for the jury, that the intent might be inferred from all the surrounding circumstances appearing upon the trial, but that the weight to be given the facts and circumstance was a question for the jury. And this we think is the true rule. (*People v. Scott*, 6 Mich. 287; *Roberts v. People*, 19 Mich. 401.)

In a case like the one under consideration, where the defendant cannot be rightfully convicted in the absence of a "felonious intent," the Territory must establish that intent beyond a reasonable doubt; and it is error for the court to instruct the jury that the Territory need not establish such intent, but that it may be inferred from the taking of personal property. It is true that the jury may infer the intent from the taking, together with all of the other facts appearing upon the trial, but it is for the jury to say whether such facts establish the necessary felonious intent to steal; and the facts necessary to prove intent vary with every case. A given state of facts might prove the intent to steal in one case, beyond a reasonable doubt, and the same state of facts, when proven against another defendant, under similar circumstances, might, in the minds of the jury, be wholly insufficient.

For the reasons herein stated, the judgment and sentence are hereby set aside, and the case remanded for a

new trial; and the warrden of the territorial penitentiary,. at Lansing, Kan., or any other person who may have the defendant in his charge or custody, is hereby directed, upon presentation to him of a copy of this opinion, duly certified by the clerk of this court, by the sheriff of Washita county, to deliver the body of the said James Hughes to the said sheriff of Washita county, who shall confine him, the said Hughes, in the common jail of said county, and detain him there to await another trial, or until otherwise discharged according to law.

Tarsney, J., having presided in the court below, and Burford, C. J., having been of counsel, not sitting; all of the other Justices concurring.