## Trotter v. Commonwealth.

(Decided April 19, 1916.)

## Appeal from Campbell Circuit Court.

1. Sales—Passing of Title to Purchaser.—The agreement of a vendor of a horse to accept a mortgage on the horse as security for the purchase price is conclusive that the minds of the parties had met and the title to the horse had passed to the purchaser.

2. Sales—Passing of Title to Purchaser.—The custody of the horse being already in the purchaser, both title and possession passed with the closing of the trade between him and the vendor.

3. Larceny—Trick or Device—Obtaining Possession of Property.— One who by trick or artifice gets possession of personal property of another with the purpose of appropriating it to his own use is guilty of larceny; but if at the time of obtaining possession he also obtains title to the property, he is not guilty of larceny, no matter what fraud or trickery he may have practiced in obtaining the title.

HOWARD M. BENTON for appellant.

LAWRENCE J. DISKEN, M. M. LOGAN, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TURNER.—Reversing.

Appellant was indicted in the Campbell circuit court charged with horse stealing, and upon his trial was convicted and sentenced to the penitentiary for not less than two nor more than three years, and from this judgment he has appealed.

The evidence shows that the prosecuting witness, McKenney, in September, 1915, was the owner of a small fruit store in Ft. Thomas, Kentucky, and a horse, wagon and harness which he used in that business; that on the 13th day of September he entered into a contract of sale with one Moore by which Moore was to pay him $100.00 for the business and the horse, wagon and harness, $25.00 to be paid down and the balance in installments of $5.00 per week. But the trade with McKenney was only a tentative one, and Moore was to take the business on trial for a week and determine at the end of that time whether he would conclude the trade. The next day after the trade between McKenney and Moore, and after the business, horse, wagon and harness had been turned over to him, Moore took the appellant Trotter into partnership with

him in the venture and turned over the store, horse,
wagon and harness to Trotter. Moore went off and dur-
ing the week was engaged in another occupation, Trotter
remaining in custody of the store and the other prop-
erty, including the horse, and during that week conducted
the store and drove the horse. On the following Satur-
day night Moore concluded that he would not enter into
the deal with McKenney, and that night went to Mc-
Kenney and told him that he would not carry out the
trade, but told him that Trotter would take the store, and
talked to McKenney about the contemplated deal with
Trotter. Prior to that time, however, and when the deal
was first made between McKenney and Moore, and after
McKenney had taken Trotter into partnership with him,
and had turned over the store and horse and wagon to
Trotter, the latter took the horse, removed it from the
stable where McKenney had kept it to another stable
rented by him for the purpose, and bought feed and
cared for the horse.

On the Sunday morning after Moore had notified Mc-
Kenney that he would not enter into the deal, and con-
structively, as he testifies, turned back to McKenney the
possession of the store and the horse, which were then
both in the custody of Trotter, McKenney and Trotter
entered into an agreement by the terms of which, as
testified to by McKenney and his wife, Trotter bought the
store for $25.00 and made a payment of $15.00 thereon
and was to pay the other $10.00 in a day or two; and
they both testified that Trotter agreed to execute on the
following day (Monday) a mortgage for $75.00 on the
horse and wagon, the mortgage to be payable at the
rate of $5.00 per week.

Although these two witnesses in their evidence un-
dertake to separate the transaction between McKenney
and Trotter as to the store from the transaction as to
the horse, wagon and harness, the written recepit given
by McKenney at the time recites the payment of $15.00
"on deal."

The evidence of the defendant is that he bought the
store and the horse, wagon and harness used in connec-
tion therewith all in one transaction and was to pay
$100.00 for them; that he paid the $15.00, as shown by
the receipt, on the whole deal, and agreed to pay $10.00
in the next day or two and to pay the remaining $75.00

at the rate of $5.00 per week, and that nothing was said about the execution of any mortgage.

This trade was made on Sunday morning and on that same day appellant took the horse from the stable—the same having been actually in his custody since the Tuesday before—used it and drove it publicly, and on the following day drove it to Cincinnati in the conduct of his business and there on about noon of that day sold the horse, wagon and harness for $35.00, but the lower court declined to permit him to state what he did with the money. That night he returned to Ft. Thomas, saw and talked with the wife of the prosecuting witness, and on the following day went to the home of his father in Indianapolis and was gone for several weeks.

Giving to the evidence of the prosecuting witness and his wife the fullest effect and drawing from it every reasonable inference, it can mean nothing more nor less than that on that Sunday morning McKenney sold the store to Trotter for $25.00 and received a $15.00 payment thereon, and sold to him at the same time the horse, wagon and harness for $75.00, which was to be secured on the following day by the execution of a mortgage on the horse, wagon and harness to secure the latter payment. The very fact that he agreed to execute a mortgage on this property is inconsistent with any other theory than that it had been sold to him. The agreement of McKenney to accept the mortgage on this property is conclusive of the fact that the minds of the parties had met and that the title to the property was in Trotter. Surely he would not have agreed to accept as security a mortgage on property which he knew did not belong to the mortgagor.

Assuming for the sake of the argument that at the time of this agreement McKenney in law had possession of the property and that Trotter at the time did not in good faith intend to execute the mortgage, as it is said he agreed to do, is it horse stealing?

The title and possession passed with the closing of the trade, Trotter already being the custodian of the horse, and there is nothing to indicate he forcibly or otherwise took the possession from McKenney. The case is in nowise different from one in which a purchaser bought and took possession of a horse and agreed to pay for it on the following day; here he bought it and took possession of it under an agreement to execute a mortgage on the following day to secure the purchase price.

· It is true that one who by trick or artifice fraudulently obtains only possession of personal property of another with the purpose of appropriating it to his own use is guilty of larceny; but if he at the time he obtains such possession also obtains *title* to the property, he is not guilty of larceny no matter what fraud or trickery he may have practiced in obtaining such title. Elliott v. Commonwealth, 12 Bush 176, 25 Cyc. 33.

The directed verdict of acquittal asked for by the appellant should have been given.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.