STATE, Respondent, v. DEMERLY, Appellant.

(168 N. W. 167).

(File No. 4315.   Opinion filed June 25, 1918.)

1. **Larceny—Sheep Mixed with Defendant's at Shearing Pen—Allowing Owner's Sheep to be Taken on Discovery, Effect, re Guilty Knowledge—Instruction.**

    Where, in a prosecution for larceny of sheep, the evidence showed that the sheep of defendant were being sheared at a pen, and that another's sheep had become mixed with his own while held awaiting shearing, that some of them had been sheared and branded with his own brand, defendant claiming that as soon as he learned that they were mixed with his own he notified owner and went with him to the pens and the owner there found among defendant's sheep part of the number of his own sheep charged to have been stolen, and which he was allowed to take away, held, that an instruction that if defendant did not know the other sheep were in his bunch or were being sheared as his own sheep, until he was so informed, and that if he then went with owner and allowed him to pick his sheep from the bunch, then defendant would not be guilty of larceny, correctly stated the law; that the question of defendant's guilty knowledge was of equal importance with that of taking of the sheep.

2. **Same—Owner's Branded Sheep Mixed with Defendant's—Herders' Knowledge of Shearing as Defendant's Sheep and Branding With Defendant's Brand, Equally Guilty—Rule.**

    Where evidence showed that at a sheep shearing pen some sheep owned by another were, to the knowledge of various herders present, sheared with and as defendant's sheep, although the owner's brand on them could be plainly seen, and such sheep were branded with defendant's brand after being sheared, said herders saying nothing to the owner concerning such transaction, defendant saying "keep still; have a few cases of beer on me;" held, that if any larceny was committed, said herders were equally guilty with the owner of the sheep with which said other sheep became mixed.

3. **Same—Other Branded Sheep Mixed With Defendant's at Shearing—Shearing and Rebranding as Defendant's Sheep, Whether Secrecy Constituting Larceny—Statute.**

    Where denfendant's sheep were being held near a shearing pen, and another's sheep became mixed with the bunch, and some of them were sheared as defendant's, though plainly branded with owner's brand, and were thereafter branded with defendant's brand, he claiming to have notified owner of the fact that some of his sheep were with his own, as soon as he

learned of the fact, and went with him while the owner picked out and was allowed to take away several of his sheep from the bunch, and when the herders remarked about these facts defendant paid no further attention than to say "Keep still; have a few cases of beer on me," held, that, conceding there was a conversion, the transaction was not accompanied by that degree of secrecy necessary to constitute larceny, under Section 605, Pen. Code, defining larceny as the "taking of personal property accompanied by fraud or stealth, and with intent to deprive the owner thereof.

4. Same—Another's Sheep Mixed With Defendant's—Shearing and Rebranding them With Defendant's Brand, Whether Larceny of Lost Property—Statute.

Where another's sheep became mixed with defendant's while held near a shearing pen, and were sheared as and then rebranded with defendant's brand, evidence showing that defendant claimed he, as soon as he learned that such other sheep were with his own, notified the owner and went with him while he picked out several of his own from the bunch and was allowed to take them away, other evidence showing that when herders mentioned the fact that such shearing, etc., was being done, defendant paid no further attention than to say "Keep still; have a few cases of beer on he," held, such transaction did not amount to larceny of lost property, under Pen. Code, Sec. 606, providing that one finding lost property under circumstances giving him knowledge or means of inquiry as to true owner and who appropriates such property to his own use, without having made an effort to find the owner, is guilty of larceny.

5. Same—Another's Sheep Mixed With Defendant's at Shearing Time—Shearing and Rebranding them as Defendant's—Evidence of Guilt, Sufficiency.

In a prosecution for larceny of sheep, the evidence showing that the sheep in question became mixed with defendant's while being held near a shearing pen, some of them being afterwards sheared as and rebranded with defendant's brand, held, evidence was insufficient to sustain a verdict of guilty.

Whiting, P. J., concurring specially.

Appeal from Circuit Court, Lawrence County. Hon. James McNenny, Judge.

William Demerly, the defendant, was convicted of the crime of larceny, and from the judgment and from an order denying a new trial, he appeals. Reversed.

Robert C. Hayes, John T. Heffron, and C. P. Seward, for Appellant.

*Clarence C. Caldwell,* Attorney General, *T. F. Auldridge,* Assistant Attorney General, and *Dan McCutchen,* State's Attorney, for the State.

(3) To point three of the opinion, Apellant cited:

Wharton's Criminal Law, 10th Ed., paragraphs 130, 131A, 211A; 12 Cyc. page 187 and Note; 4th Am. & Eng. Enc. of Law, 1st Ed., page 673; 1st Bishop New Criminal Law, paragraphs 633-641-643-889; Tex. Guest v. State, 5 S. W., page 840; Queen v. Flowers, 6 Am. Crim. Rep. 388.

(4) To point four of the opinion, Appellant cited:

Pritchett v. State, (Tenn.) 62 Am. Dec. page 468; Bishop's New Criminal Law, par. 802, Subdiv. 4, 837.

Respondent cited:

People v. Buelna, 81 Cal. 135, 22 Pac. 396; State v. Hoshaw, 89 Minn. 307, 94 N. W. 873; State v. Hayes (Iowa) 67 N. W. 674, 37 L. R. A. 116.

POLLEY, J: Appellant was convicted of the larceny of 50 head of sheep, and, from the judgment of conviction and an order overruling his motion for a new trial, he appeals to this court.

Appellant assigns the insufficiency of the evidence to support the verdict and newly-discovered evidence, as well as errors of law committed by the trial court. The larceny is alleged to have been committed under the following circumstances: Appellant and the prosecuting witness, Bates by name, were engaged in the sheep business. Each had a drove of sheep on neighboring ranges in Butte county. In the vicinity of these ranges were certain sheep pens where sheepmen in the surrounding neighborhood brought their sheep at shearing time to have them sheared. During the shearing season of 1916 appellant and Bates, by chance, brought their sheep to these pens at the same time. Appellant had his sheep in the two droves, or bands, of about sixteen or seventeen hundred head, respectively, while Bates claimed to have had fifteen hundred and thirty-four head in his drove. A herder by the name of Oleson had charge of one of defendant's droves of sheep, while another herder by the name of Grayson had charge of the other. The Oleson band was taken to the shearing pens first. The work of shearing his band of sheep was interfered with and delayed by rain and bad weather, and it was some eight or ten days from the time they reached the pens

before the shearing was completed. While the Oleson sheep were occupying the shearing pens, it was necessary that the other droves of sheep that were awaiting their turn at the pens to be herded and allowed to graze in the immediate vicinity. It appears that during the time the Oleson sheep were in the pens the Bates sheep and the Grayson band of appellant's sheep were allowed to come in contact, and a few (the exact number is not shown) of the Bates sheep mingled with the appellant's sheep. But this mingling of the sheep was not done with the knowledge of, or through the connivance or negligence of, either appellant or Grayson, but appears rather to have been the result of negligence on the part of Bates' herder in allowing the Bates sheep to graze too near to the appellant's sheep. It does not appear that either Bates or his herder knew that Bates' sheep had become commingled with appellant's sheep until after the Grayson sheep had been driven into the shearing pens and the shearing had commenced. Neither does it appear just when Grayson learned that the sheep were mixed, though he admits that he knew, for about a week before he made the fact known to any one else, that some of Bates' sheep were in appellant's herd. As soon as the Grayson sheep reached the pens, the shearers commenced shearing. They assumed that the sheep all belonged to appellant, and the wool, as it was taken off, was all packed together. The sheep, when sheared, were turned into a chute, where they were marked with appellant's brand and then turned out into the pen. There was a sharp conflict in the testimony as to how long the shearing of the Grayson sheep had been going on before Bates learned that some of his sheep were in the pens, but as soon as he learned the fact he went immediately to the shearing pens where he found appellant and told appellant that some of his (Bates') sheep were mingled with appellant's sheep. Appellant claims that this was the first knowledge he had that any of the Bates sheep were in the pens with his own. He at once went into the pens with Bates and commenced looking for sheep bearing Bates' mark. The sheep had been marked at shearing time the year before by painting a brand on the short wool, just after the sheep had been sheared. As the wool grew, the brand gradually became dim and difficult to distinguish, and, after the sheep had been sheared, there was no way by which they could be distinguished;

but Bates found twelve sheep that he claimed as his and took them away with him. He claimed that at the time he took these sheep out of the pens, all but about three or four hundred of the Grayson sheep had been sheared, there was no way by which they could be distinguished; but Bates found twelve sheep that he claimed as his and took them away with him. He claimed that at the time he took these sheep out of the pens, all but about three or four hundred of the Grayson sheep had been sheared, and it is the theory of the state that there had been the same ratio of Bates' sheep in the pens when shearing commenced that was there when Bates made the search. In other words, having found twelve of Bates' sheep in with three or four hundred of appellant's sheep, there must have been from sixty to one hundred of Bates' sheep in the entire drove of some sixteen or seventeen hundred. It is the contention of the state that appellant knew the Bates sheep were in with his when the sheep were put into the pens, and that, in permitting the Bates sheep to be sheared as his own and having them marked as his own, he was feloniously appropriating said sheep, as well as the wool that had been sheared from their backs, to his own use. On the other hand, it is the contention of appellant that he did not know that any of the Bates sheep were in with his own until he was informed of the fact by Bates, and that he at once permitted Bates to examine the sheep and take out all that bore the Bates brand; and that he (appellant) did not knowingly take or appropriate any of the Bates sheep.

[1] Upon the question of appellant's knowledge the court charged the jury as follows:

"Now, gentlemen, on the other hand, the defendant Demerly, as I understand it, claims that he did not know that the sheep were in his bunch and did not know that they were being sheared as his sheep, and that he did not know there were any sheep belonging to Bates and Humphrey in his bunch, until he was informed by Mr. Bates, and that immediately upon being informed he went with Mr. Bates and allowed Mr. Bates to pick his sheep out of the bunch. Now, gentlemen, if that is the case, the defendant would not be guilty."

Under this instruction, which was accepted as the law in the case, and which we believe to be correct, the question of defendant's guilty knowledge is of equal importance with the question

of the taking of the sheep. To prove that appellant knowingly took the Bates sheep, the state put upon the stand five witnesses, viz., Grayson, Oleson, Burke, Carter, and Hoey. These witnesses were all in or around the shearing pens at times while the Grayson band of sheep was being sheared, and appellant was there a part of the time. Grayson testified that he knew for about a week before the sheep were driven into the shearing pens that the Bates sheep were in with appellant's sheep, but he made no effort to separate them nor did he notify Bates, although he could easily have done so. He testified that he told defendant about Bates' sheep some time after the shearing commenced. All of these witnesses testified that the fact that some of the Bates sheep were in with and were being sheared as appellant's sheep was known to, and was talked of, by every one employed in or about said shearing pens; that Bates' brand could be plainly seen and recognized, and that the shearers saw the Bates brand on the sheep when they were shearing them; that the matter was talked of by all parties present and in the presence and hearing of appellant; that appellant paid no attention to what was being said or done, except that on several occasions when the matter was mentioned in his presence he said, "Keep still; have a few cases of beer on me." The witness Hoey estimated the number of Bates' sheep that he saw in with appellant's sheep at fifteen or twenty, "more or less." Grayson, Oleson, and Carter testified that there were "about one hundred" of the Bates sheep in with appellant's sheep, though just why they all fixed upon that particular number is not made to appear. None of them pretended they had counted said said sheep or that it was possible to count them, and Bates lost only seventy head, including the twelve that he recovered.

[2-5] If the testimony of these witnesses is true, and larceny was committed at all, all these witnesses knowingly assisted in committing such larceny, and are equally guilty with the defendant. But the facts as shown by the testimony do not constitute the crime of larceny. Whether or not the defendant converted certain of the Bates sheep to his own use we are not called upon to determine, but, conceding there was a conversion, the transaction was not accompanied by that degree of secrecy necessary to constitute the crime of larceny. Section 605, Penal Code, defines larceny as the "taking of personal property accompanied by fraud or stealth, and

with the intent to deprive the owner thereof." The gaining possession of the Bates sheep was not accompanied by fraud or stealth, nor was it done with the intent to deprive the owner thereof. Defendant may have been guilty of moral turpitude in not taking measures to separate the sheep as soon as he learned that any of the Bates sheep were in the shearing pens with his own, but the manner in which the sheep came into his possession does not constitute larceny as defined by section 605, Penal Code. It is claimed by the state, however, that appellant is guilty, under the provisions of section 606, Penal Code. This section provides that one who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner and who appropriates such property to his own use, without having made an effort to find the owner, is guilty of larceny. The manner in which the sheep in question came into defendant's possession does not constitute finding of lost property within the meaning of this statute, and does not constitute larceny because of the insufficiency of the evidence to support the verdict.

The judgment and order appealed from are reversed.

WHITING, P. J.   While refraining from placing any construction upon section 606, Penal Code, I concur in holding that the judgment and order appealed from should be reversed. I so concur because I am of the opinion that the evidence was wholly insufficient to support the verdict.