## ROY RILEY v. STATE.

No. A-9240.   April 14, 1938.
(78 P. 2d 912.)

184

Eaton & Wheeler, of Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and James K. Eaton, Co. Atty., for the State.

BAREFOOT, J. The defendant was charged by information in Okmulgee county with the crime of larceny of an automobile, was tried, convicted, and sentenced to serve a term of five years in the reformatory at Granite, and has appealed.

The evidence reveals: That the Highway Motor Company of Okmulgee was operated by Joe Bryant and Cy Shinn; that A. L. Pursley was an automobile salesman working for said company; that the defendant, Roy Riley, resided near Henryetta, Okla.; that Mr. Pursley had Mr. Riley, who was a World War veteran, expecting to secure a bonus, as a prospect for the purchase of an automobile; that just prior to April 12, 1936, he called at defendant's home and left word for him to come to Okmulgee, and defendant went to the place of business of the Highway Motor Company for the purpose of consummating the deal for the

purchase of a V-8 Ford automobile for $455; that a down payment of $73.75 was to be made and monthly payments of $15 per month were to be paid until he received his bonus, when the balance was to be paid. Defendant consummated this deal on July 12, 1936, which was on a Sunday, and just before the deal was closed he informed the owners of the Highway Motor Company, to whom the matter was referred by the salesman, that he did not have the cash to make the down payment; that it would be necessary for him to go to Henryetta to make arrangements. Mr. Pursley accompanied him; that they made several stops and defendant reported that he had no luck and that he had only $55 in the bank at Henryetta. Defendant then asked if it would be all right to give a check. He was informed by the salesman that it would be up to Mr. Bryant and Mr. Shinn, proprietors of the Highway Motor Company. They agreed to accept his check for $48.25, payable on the fund he represented as being in the bank at Henryetta, and accepted his check for $25, dated two days later, with the promise that the money would be placed in the bank to meet this check. He at the same time executed a check for $5 to Mr. Pursley, who gave him the money thereon as expense money, and defendant advised that it would leave him $1.25 in the bank. Defendant then executed a contract for the purchase of the automobile on the installment plan. At the time of the purchase of the car defendant further represented that he was employed at the Eagle Picher Smelter Works at Henryetta, and had been working there two years. The car was immediately turned over to the defendant. The checks were presented and turned down. The defendant had no account at the bank at Henryetta, and had not had any there. The defendant was not in the employ of the Eagle Picher Smelter Works. When these matters were revealed, the finance company refused to accept the paper from the Highway Motor Company. A search was at once started to locate the defendant, and he could not be found. Cards were gotten out by the company and a reward for the arrest of defendant

and return of the car was offered. About a month later he was arrested in Fort Worth, Tex., and the car was recovered from his possession. The 1936 Oklahoma license had been removed from the car and a 1936 Texas license placed thereon. Defendant was immediately returned to Okmulgee, and was there charged by information with the theft of an automobile; was tried, convicted, and sentenced to serve a term of five years in the reformatory at Granite.

Defendant cites seven assignments of error, but in his brief relies upon two:

"First: That the evidence is insufficient to sustain a conviction, and

"Second: The court erred in failing to grant a continuance requested by defendant."

The general larceny statute of this state, Oklahoma Statutes 1931, § 2253, Okla. St. Ann., tit. 21, § 1701, p. 647, provides:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

The statute for the theft of an automobile is Oklahoma Statutes 1931, § 1891, Okla. St. Ann., tit. 21, § 1720, p. 688, and reads as follows:

"Any person in this state who shall steal an automobile or other automotive driven vehicle shall be guilty of a felony, and upon conviction shall be punished by confinement in the state penitentiary for a term of not less than five (5) years, nor more than twenty (20) years."

It was under this last statute that the defendant was charged. This statute was enacted in 1919 and this court, in the case of Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066, has held the same constitutional. It is also held in this case that by the enactment of this statute automobiles and automotive-driven vehicles are withdrawn from the operation of the grand larceny statute of this state. Adams

v. State, 25 Okla. Cr. 298, 220 P. 59; Gilbert v. State, 23 Okla. Cr. 352, 214 P. 936.

The information in this case was sufficient. See Copperfield v. State, 37 Okla. Cr. 11, 255 P. 590. In the case of Roach v. State, 23 Okla. Cr. 280, 214 P. 563, 564, it is said:

"The rules of pleading relating to the larceny of automobiles and the larceny of livestock are the same under our practice."

In the case of Underwood v. State, 23 Okla. Cr. 119, 212 P. 1010, 1011, it is said:

"By fraud and stealth, * * * with the felonious intent * * * to permanently deprive the said owner thereof."

This was a sufficient averment in the information for the stealing of livestock.

It will be noted that the general larceny statute uses the words "fraud and stealth"; the automobile statute and the statute with reference to the larceny of livestock use the word "steal." This court has held in the case of Derrisaw v. State, 29 Okla. Cr. 377, 234 P. 230, that:

"In order to constitute the offense of stealing, there must be a wrongful taking, with a felonious intent on the part of the taker to deprive the owner thereof and to convert the property taken to the taker's own use."

The statute with reference to stealing domestic animals in this state, Oklahoma Statutes 1931, § 2267, Okla. St. Ann., tit. 21, § 1716, p. 677, uses the same word "steal" as does the automobile statute. In the case of Hughes v. Territory, 8 Okla. 28, 56 P. 708, 710, Justice Burwell of the territorial Supreme Court, in an elaborate opinion, distinguished between the terms of the larceny statute of this state and this special statute. The court said:

"Taking into consideration the rule of construction as enunciated by Mr. Bishop, we must conclude that when the Legislature used the word 'steal' in the act of 1895, under which the defendant was indicted, tried, and convicted, it

had in mind the crime of stealing or larceny as it existed at the common law, and not larceny as defined by our Statutes of 1893."

The reasoning in this case has been followed by this court in the case of Crowell v. State, 6 Okla. Cr. 148, 117 P. 883, and applies with equal force to the statute with reference to the theft of automobiles. By the use of the word "steal" in this statute the Legislature had in mind the crime of stealing or larceny as it existed at common law, and not as defined by the general statutes. At common law larceny was defined as the wrongful or the fraudulent taking and carrying away, by any person, of the personal goods of another, from any place, without any color of right, with a felonious intent to convert them to the taker's own use, and making them his own property without the consent and against the will of the owner.

It is contended by defendant in this case that, under the evidence as above set forth, he is not guilty of larceny, but that if guilty of any crime it is either embezzlement or obtaining property under false pretense. In the case of Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033, this court very clearly distinguishes between the crime of larceny and embezzlement, and holds that where larceny is committed by fraud, or whether it is embezzled is determined with reference to the time when the fraudulent intent to convert the property to the taker's own use. In larceny, the criminal intent must exist at the time of the taking of the property, and it must be taken with an intent to deprive another thereof. But if the receiver takes the property as a bailment, with the intention at the time to comply with the terms of the bailment, or to conform to the owner's wishes concerning the property, and he afterwards fraudulently appropriates the property to his own use, intending to deprive the owner thereof, the crime is embezzlement. Under the facts in the case at bar, it will be clearly seen that the crime committed here was not embezzlement.

The distinction between "larceny" and "false pretense" is not so easily drawn. As stated in 17 R. C. L. § 14, p. 14:

"There is, to be sure, a narrow margin between a case of larceny, and one where the property has been obtained by false pretenses. The distinction is a very nice one, but still very important. The character of the crime depends on the intention of the parties. The intention of the owner to part with his property is the gist and essence of the offense of larceny, and the vital point on which the crime hinges, and is to be determined."

On the other hand, the same authority announces that it is the rule of the common law that if the owner of the goods parts "voluntarily" with both the "possession" and "title" to the alleged thief, not expecting the goods to be returned to him, or to be disposed of in accordance with his directions, there the taking or conversion amounts to larceny for the reason that no necessary trespass is shown in the taking, and this rule applies although the owner may be induced to part with the title through the fraud and misrepresentation of the thief. It will be noted that the words "voluntarily," and "possession," and "title" are all used. Can it be said that a defendant secures the possession of property voluntarily when by means of a false token, such as the giving of a check upon a bank in which he has no funds, and had not had any account therein, and upon the direct statement that he had the funds therein at the time the check was given, and the further statement that he was in the employ of a certain company known to be a responsible company, and that he had been in their employ for a period of two years, all of which statements were false? It does not occur to this court as sound argument to say that a party who parts with the possession of his property under such circumstances parts with it voluntarily, and especially when based upon such false and fraudulent statements as above stated. It occurs to us that the jury was warranted in finding under the instructions of the court, which were not excepted to by defendant, that it was the intention of the defendant at the very time he bought the car to falsely

appropriate the same to his own use and benefit, and to commit the crime of stealing the same as prohibited by the statutes and as alleged in the information in this case.

The Supreme Court of this state has universally held that where goods are sold for cash and delivered, and the vendor takes the vendee's check for the price, which on presentment in due time is dishonored, title to the goods does not pass and the vendor may reclaim the property from the vendee, and any party who does not have any greater equities. Mott v. Nelson, 96 Okla. 117, 220 P. 617; First National Bank of Byars v. Griffin & Griffin, 31 Okla. 382, 120 P. 595, 49 L. R. A., N. S., 1020; C. M. Keys Commission Co. v. Beatty, 42 Okla. 721, 142 P. 1102. This rule is also announced in an elaborate note in 31 A. L. R. at page 579, where the editor says:

"Upon a sale of personalty for cash, payment is a condition of the passing of title (24 R. C. L. 23), and when the buyer gives a check or draft for the purchase price, and it is accepted by the seller as the means of payment, it constitutes only a conditional payment, and as between the parties payment becomes absolute only when the paper is paid, and until such payment title does not pass."

And cases are cited from many different states. The case of Mott v. Nelson, supra, has many points in common with the case at bar, and while it is a civil case the argument and reason given applies with equal force with the facts in this case.

It follows, therefore, that if there was not a voluntary parting with the property by the Highway Motor Company, and the title to the property had not passed from them to the defendant, then this case does not come within the rule above announced. This being true, if the defendant at the time of securing possession of the automobile had the felonious intent to convert the same to his own use, and did so convert it, he would be guilty of larceny. The fraud would take the place of the trespass in the taking. Under the in-

structions of the court the jury had a right in deciding this matter to take into consideration the fact that defendant had made the false misrepresentation above referred to, and to the further fact that immediately after securing possession of the automobile he left for a foreign state, and that a month later he was there located by the officers with the automobile in his possession, and the 1936 Oklahoma license had been removed therefrom and a 1936 Texas license substituted therefor.

We are of the opinion that under the facts in this case defendant was guilty of the crime of stealing an automobile as provided by the statutes of this state. Cases from this court, while not directly in point, sustain the rule above announced. Bivens v. State, 6 Okla. Cr. 521, 120 P. 1033; Flohr v. Territory, 14 Okla. 477, 78 P. 565; Glaze v. State, 13 Okla. Cr. 431, 165 P. 211; Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066; Underwood v. State, 23 Okla. Cr. 119, 212 P. 1010; Crowell v. State, 6 Okla. Cr. 148, 117 P. 883; Hughes v. Territory, 8 Okla. 28, 56 P. 708; Huckaby v. State, 22 Okla. Cr. 376, 211 P. 525; Eslinger v. State, 41 Okla. Cr. 426, 273 P. 1024.

This rule has been followed in the decisions from other courts; one of the leading cases being that of United States v. Rodgers, 1882, 1 Mackey 419, 12 D. C. 419, cited in 35 A. L. R. 1337, which gives the strongest reason for the rule, which we are now adopting in Oklahoma, and which is being followed by the later cases in the other courts of the union. It is there said:

"It has been held that where a person procures the sale of goods to himself on credit by false representations, or by giving or exhibiting a false token, not intending at the time to pay for them, he is guilty of larceny. United States v. Rodgers (1882) 1 Mackey (D. C.) 419. See, also, Huckaby v. State (1923) 22 Okla. Cr. 376, 211 P. 525.

"In a case in the District of Columbia in which a conviction of two persons of larceny was sustained, it appeared that they had fraudulently conspired to obtain the horse of

another, and that the owner of the horse received part payment, and was induced to go to another place for the balance of his pay, leaving his horse, in the meantime, in the possession of one of the vendees. On his return he found that it had been taken away. It was held that there was an incomplete sale and an incomplete or conditional delivery of the horse, as the transaction was not to be complete until the purchase money had been paid, and the title to the horse was not intended to be passed until payment. United States v. Rodgers (D. C.) supra. The court, in referring to the rule where both possession and title have passed, remarked, obiter: 'If the question were res integra, I should myself hold that in no case could title pass where the possession has been obtained by fraud or deceit; and in my opinion there is no solid ground of distinction between cases where the title has been obtained by fraud and those in which only a naked possession has been so obtained. To say that a vendor has parted with his title under such circumstances may be correct in terms, but how has he parted with it? Why, under the influence of fraud and false pretenses. His judgment and will have been cheated. All the requirements necessary to constitute a legal contract for the alienation of property have been outraged; yet that which the law, in its civil issues, treats as void, by the sublimated metaphysics of the criminal law is made valid. This is a refinement in the direction of protecting guilt and defrauding innocence; it is a distinction in violation of common sense, and of all the analogies of the law; and if I were not bound by precedents I should not hesitate to declare all such transactions larcenies."

See, also, notes in 26 A. L. R. 391, 35 A. L. R. 1336, and 83 A. L. R. 441, where the editor's notes says:

"It may be stated generally that where the possession of property is acquired with the understanding, express or implied, that cash payment is to be made therefor, and under circumstances negativing the idea of the intention of the seller to part with his title to the property until payment is made, the offense of appropriating or removing the property without payment may constitute larceny, provided, there was a felonious intent on the part of the purchaser at the inception of the transaction." State v. McConnell, 136 Kan. 30, 12 P. 2d 797; Shipply v. People, 86 N. Y. 375, 40 Am. Rep. 551; Williams v. State, 165 Ind. 472, 75 N. E.

875, 2 L. R. A., N. S., 248; People v. Miller, 169 N. Y. 339, 62 N. E. 418, 88 Am. St. Rep. 572; Trotter v. Commonwealth, 169 Ky. 551, 184 S. W. 871, L. R. A. 1916E, 768; Anderson v. State, 77 Tex. Cr. R. 31, 177 S. W. 85.

We have read the record with reference to the contention that the court erred in refusing to continue this case. No motion for continuance was filed. The defendant was arraigned on June 2, 1936, and was told that his case was set for June 22d, and the counsel who was representing him at that time was informed if they wished to withdraw from the case they could do so by the 10th of June. No effort was made by defendant to secure the services of any other attorney. The court appointed counsel to represent him. The attorneys who represented him originally are representing him in this appeal. This matter under the law was within the discretion of the trial court, and we find nothing which shows that this discretion was abused. The information was in proper form. The instructions of the court fully protected the rights of the defendant, and presented the issues to the jury for their determination. No exceptions were taken to the instructions. We find no reversible error in this case, and the judgment of the district court of Okmulgee county is therefore affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.