STATE, Respondent v. TROUTNER, Appellant

(125 N.W.2d 55)

(File No. 10044. Opinion filed December 9, 1963)

**LeRoy Lassegard,** Mitchell, for Defendant and Appellant.

**Frank L. Farrar,** Atty. Gen., **D. J. McClure,** Asst. Atty. Gen., Pierre, **A. H. Shuster,** State's Atty., Mitchell, for Plaintiff and Respondent.

HOMEYER, J. Defendant appeals from a verdict and judgment convicting him of the crime of grand larceny. The information drawn in substantial conformity with SDC 13.3801 charged

that on or about February 13, 1962, defendant did by fraud and stealth take, steal and carry away a 1957 Oldsmobile, the property of Western Chevrolet Company of Mitchell and not the property of the defendant, with intent to deprive Western Chevrolet thereof.

The question of prime importance on this appeal is whether or not the facts are sufficient to sustain the conviction of larceny.

The facts are undisputed. Defendant did not testify. The only defense witness was the Register of Deeds of Davison County who testified on transfers of the certificate of title to the automobile as disclosed by her official records. Defendant was interested in buying a used car and on February 1, 1962, was referred to Western Chevrolet by Securities Acceptance Corporation, a finance company. Barns, a salesman for Western, showed defendant the Oldsmobile and a Cadillac. He drove both cars. The Oldsmobile met with his approval, but needed a carburetor adjustment. Defendant told Barns that he would like to buy the car, but would have to make the necessary (financial) arrangements. Barns quoted an outright sale price of $935. He got the car ready for delivery, but had no further contact with defendant until February 7th. On that date he stopped at Securities Acceptance and picked up a conditional sales contract which had been prepared by an employee of the finance company at the request of defendant. It called for a cash down payment of $200, but why and at whose direction this figure was inserted does not appear from the record. The employee who prepared the contract testified he told defendant if he wanted to pay him $200 he could sign the contract and pick up the car. It may be inferred that the $200 figure was inserted by the finance company as a necessary margin before it would accept the financing contract.

Barns took the conditional sales contract to the Stahr-Line Boat Company where defendant was employed and obtained his signature. He did not have the Oldsmobile with him. Shortly afterwards over a cup of coffee at a nearby cafe, he had him sign a retail order or so-called salesman's invoice. The details on delivery of the car are vague, but it appears that Barns delivered the car to defendant on February 7th after the conditional sales contract and retail order had been signed. It is clear that defendant in-

formed Barns before and at the time of delivery that he did not have $200 in cash for the down payment and would have to make arrangements at a bank for additional financing. Barns told defendant he would be out of town the next day, but the money could be left with the bookkeeper or sales manager. A notation was made on the retail order that a $200 payment was due to complete the deal.

The conditional sales contract although prepared by the finance company was between Western Chevrolet as vendor and defendant as vendee. It was executed by Robert L. Verschoor, an officer of Western, and on the reverse side was assigned by him with recourse to Securities. Verschoor also assigned the certificate of title to defendant. Barns delivered the executed conditional sales contract, assignment thereof, and certificate of title assigned to defendant to Securities on February 7th. Securities paid Western $735. Insurance coverage effective immediately was provided as a part of the obligation assumed by defendant under the conditional sales contract. Securities processed the title transfer and a new certificate of title was issued to defendant with Securities as a lien holder. Subsequently Securities applied for and was issued a repossession certificate of title.

Barns saw defendant driving the car on the streets of Mitchell on February 10th. They talked briefly and defendant told him he would be down to see him that night. Later that day he telephoned and asked how late they would be open and said he would see him. Barns did not see defendant again and made no effort to contact him until February 12th when he called his employer. The next day he learned that defendant had departed for Alaska the previous evening, taking the car with him. Barns then contacted the sheriff and told him that he had a car going out of the state that wasn't paid for, that the transaction with the garage wasn't complete and he wanted the car back in the state. Barns admitted that he had fixed no "deadline" for payment of the $200. Defendant did not inform Barns on plans which he and a fellow employee at the boat works had for going into a boat-building business in Alaska. These plans had been discussed since early in January. Defendant was arrested at Shelby, Montana, after he encountered trouble crossing the border into Canada.

The state tried the case on the theory that defendant was guilty of larceny by fraud. It maintained that there was a cash transaction on the sale of the car and possession was given conditioned on a $200 cash payment; that Western did not intend to pass ownership or title until such cash payment was made. Defendant contends that the evidence is insufficient to establish that a cash sale was intended. He also maintains that ownership and title to the automobile were vested in him and hence he could not be guilty of larceny. State v. Paul, 41 S.D. 40, 168 N.W. 739.

■ Under the facts related and viewing them in a light most favorable to the state we hold that they are not sufficient to sustain the conviction. The theory of the prosecution must be supported by evidence before a conviction can be sustained. State v. Lindley, 13 S.D. 248, 83 N.W. 257.

■ Barns, the principal witness for the state, termed the transaction a cash sale, but this was a mere conclusion on his part as to the kind and character of the sale. From the time of his initial contact with Western after reference by the finance company, defendant conditioned his prospective purchase on ability to make credit arrangements. The conditional sales contract which he executed was a credit instrument between defendant and Western. It received cash to the extent of $735 on the sale price only upon its guaranteed assignment to the finance company. The automobile was delivered to defendant without payment of an additional $200 in cash upon defendant's statement that he would have to make credit arrangements at a bank. No time was fixed for him to pay this sum and no condition was attached to delivery of the car requiring that it be returned if payment was not made. Three days later Barns talked to defendant and still no time was fixed for payment and defendant was not told that the automobile must be returned unless the money was paid. Even after defendant departed the state, Barns only said he wanted the car back in the state because it wasn't paid for. The conclusion is inescapable that a credit transaction was intended and resulted irrespective of what Barns may have termed it. There being a completed sale on credit defendant could not be convicted of larceny. Thomas v. State, 62 Ga.App. 725, 9 S.E.2d 854; Segal v. State, 98 Tex.Cr.Rep. 485, 265 S.W. 911, 35 A.L.R.

1331; Trotter v. Commonwealth, 169 Ky. 551, 184 S.W. 871, L.R.A. 1916E, 768; 2 Wharton Crim. Law & Procedure, § 477, p. 128; 52 C.J.S. Larceny § 44a, p. 838.

The rule is generally stated in 32 Am.Jur., Larceny, § 30, p. 920: "A purchase of property on credit ordinarily vests both title and possession in the purchaser and in accord with the general rule, such a purchase is not larceny although at the time the pretended purchaser entertains an intention not to pay for the goods, and even though he induces the owner to part with them by practicing fraud or trickery, as by making false representations or giving or exhibiting a false token, or by promising to pay or to give security therefor, without intent to do so." See also State v. Paul, supra. In an early English case, Reg. v. Slowly, (1873) 12 Cox C.C. 269, 270, Justice Kelly in sustaining a conviction of larceny wrote: "If in this case it had been intended by the prosecutor to give credit for the price of the onions, (the articles alleged to have been stolen) even for a single hour, it would not have been larceny."

We have considered SDC 1960 Supp. 44.0202(4). It is argued that by virtue of this statute, there could be no completed sale and defendant could not acquire any right, title, claim or interest in the automobile until a certificate of title was issued to him. The facts are that Western executed the assignment of title to defendant on February 7th. The title with assignment was delivered to the lien holder, Securities, on that day, and the lien holder applied for a new certificate of title. The new certificate was subsequently issued to defendant as owner and Securities as lien holder. The formal issuance of the certificate was a ministerial act to be performed by public officials. We do not believe it was intended by this statute to make a transaction under the described facts a crime under SDC 13.3801. Defendant received both voluntary possession and the indicia of ownership of the Oldsmobile under the facts related. See Libertin v. St. Paul Fire & Marine Ins. Co., 74 S.D. 436, 54 N.W.2d 168.

It is also argued that the sale was not complete because the retail order provided on its face that it was not binding until accepted by the dealer or his authorized representative. Barns testified this meant accepted by either Bob Verschoor or

Anderson, the sales manager. The retail order does not bear the signature of either Verschoor or Anderson. This argument is untenable. The evidence shows the conditional sales contract was executed by Robert L. Verschoor. He also assigned the conditional sales contract to Securities and assigned the certificate of title to defendant. Verschoor did not testify in the case. However, in view of his actions in executing these instruments we are satisfied that there was an implied approval of Barns' actions in making the sale in the manner disclosed by the record.

The facts shown by the testimony do not establish that defendant committed the crime of larceny by fraud. The evidence as a matter of law is not sufficient to support the conviction. State v. Demerly, 40 S.D. 513, 168 N.W. 167. The motion for acquittal should have been granted.

Reversed.

All the Judges concur.